63758. WARD v. CITY OF MILLEN et al.

DEEN, Presiding Judge.

The appellant's 25-year-old son was drowned while swimming with younger friends in a pool maintained by the National Association for the Advancement of Colored People (NAACP) on a nominal lease from the City of Millen. Other defendants include the

president and vice president of the local chapter and the single life-guard on duty at the time. At the conclusion of the evidence a verdict was directed in favor of the defendants, from which judgment this appeal is taken.

One who maintains a swimming pool for the benefit of the public is not an insurer of its patrons, but is liable for negligence in its maintenance proximately resulting in the death of one using it for its intended purpose. *Y.M.C.A. v. Bailey,* 107 Ga. App. 417 (130 SE2d 242) (1963); S & C Co. v. Horne (Va.) 235 SE2d 456 (1977). The appellant points to three bits of testimony in this record which it is contended make a jury question: The maintenance of the water in a murky condition; the testimony of one witness that the lifeguard had been inattentive in going over to the fence to engage in social conversation, and the manner in which cardiopulmonary resuscitation was effected.

That the water in the pool was exceedingly cloudy is established by the fact that although the deceased had been standing in water between 4 and 4-1/2 feet deep at the rope dividing the deep and shallow end of the pool, his body could not be seen on the bottom and it was necessary for the lifeguard to send someone down to search for him. The body was located in the spot where he had been standing, lying face up on the bottom. The guard lifted him to the deck and began both mouth to mouth breathing (he was not breathing naturally) and cardiac resuscitation by chest compression (although he still had a faint natural pulse).

The deceased was the only adult at the pool other than the lifeguard and one of the club officers who was engaged in repairing the diving board. Because they could not use it, most of the older youngsters had departed, leaving 16 to 20 children in the pool. An 11-year-old cousin testified that she "saw him held up his hand going down and I didn't pay it no attention because I thought he was playing." However, her testimony regarding the time frame of this activity differs from that of other witnesses. It is clear that the guard, realizing he could not see the victim, immediately sent a diver down to search the bottom for him.

The rescue unit arrived in a matter of minutes and found the lifeguard employing cardiovascular techniques on the victim. Both the guard and the rescue team verified that the victim had a weak pulse at that time. Because of this the cardiac phase was temporarily discontinued, and mouth to mouth pulmonary resuscitation was used. Cardiac massage was recommenced on the trip, but the victim was dead on arrival at the hospital. A mortician examining the body testified that there was "a lot of water" in the lungs, and certified death by drowning.

A number of cases have held that the murkiness of water in which a drowning victim has been bathing may be alleged and proved as negligence providing there is a relationship between the condition of the water and the injury to the victim, although if the evidence shows that the death would have occurred in any event the condition, although resulting from negligence, is not actionable as a concurrent proximate cause. See *Anno.,* 86 ALR3d § 6, pp. 1021, 1056 et seq. In particular it was held in Burgert v. Tietjens, 499 F2d 1 (1974) that to open the pool to the public when visibility was 2-1/2 to 3 feet was negligent since this condition might interfere with the duty of their lifeguards and thus be a proximate cause of the drowning. The same result was reached in Mock v. Natchez Garden Club, 230 Miss. 377 (92 S2d 562) (1957) where the water was so cloudy that one could not see well at the deep end of the pool. The same result was reached in Horne, supra, where the witness stated that she could not see the bottom where the body was lying, in a pool with a maximum depth of 8 feet. As stated in Bartley v. Childers, 433 SW2d 130 (Ky., 1968) it is as much the function of a lifeguard to rescue bathers in trouble and to revive those in a drowning condition as it is to keep bathers from getting into a drowning condition.

Allegations charging negligence on the part of the defendant or contributory negligence on the part of the drowning victim are for jury decision and will not generally be resolved by the court as a matter of law. *Knowles v. LaRue,* 102 Ga. App. 350 (116 SE2d 248) (1960). Here it is obvious that the lifeguard, who missed the victim from the place he had last seen him below the lifeguard's seat, acted promptly, sent someone down to search for the body, and brought up the decedent while his pulse was still beating. If the water had been clear the operation might well have been successful as the guard or another person would have been likely to discover him sooner in water less than chin high.

We have already stated that there is a conflict in the evidence to some extent as to the location of the lifeguard at the time the victim went under, and we must of course construe such conflicts in favor of the party opposing the motion, since "the words '*no conflict*' are so sweeping and full of meaning as to withdraw the permission [of Code § 110-104] if there be even the slightest conflict in the testimony." *Davis v. Kirkland,* 1 Ga. App. 5, 10 (58 SE 209) (1907). Thirdly, there is some testimony to the effect that administering cardiac massage if the victim's pulse is palpable may have deleterious consequences on the heart. This may be considered in view of the fact that the plaintiff's son was alive — that is, with a natural pulse — at the time he was placed in the rescue unit and dead at the time it reached the hospital.

Although the evidence as a whole is ample to sustain a verdict in favor of the defendant, it cannot be said that such a verdict was demanded. It was error to direct a verdict in favor of the defendants NAACP and Shivers.

No negligence appears, however, as to Charlie Mosley or Clifford Mosley. As to these defendants the direction of the verdict was proper.

*Judgment reversed in part and affirmed in part. Pope, J., concurs. Sognier, J., concurs in the judgment only.*

DECIDED APRIL 16, 1982.

*R. H. Reeves III, G. Clyde Dekle, Jr.,* for appellant.
*Carl J. Surrett, Mary G. Colley,* for appellees.