A89A0761. WARE COUNTY v. MEDLOCK.
(385 SE2d 429)

DEEN, Presiding Judge.

This is an interlocutory appeal of the denial of the defendant Ware County's motion for summary judgment.

The appellee Medlock claimed injuries as a result of falling into a hole when the grass caved in beneath him on the Ware County Courthouse lawn. He had stepped on the lawn, just off the sidewalk, to examine a moonshine still which had been put on display near the jailhouse. He contended that because the grass in that area was brownish or dying, and the nearby sidewalk was cracked above where

it was later found the hole extended, the county had a duty to inspect the grounds and protect him as an invitee, and that its failure to do so rendered it liable.

In denying appellant's motion for summary judgment the trial judge set forth in his order that appellee "contends that defendant had constructive knowledge of the existence of an underground hollow since grass in the area was turning brown. Defendant, in support of its motion for summary judgment, argues that patches of brown grass could result from heat, drought, disease, or insect damage, and alone could not constitute constructive knowledge of an underground hollow or any other defect. It appearing to the Court from a review of the record, briefs, and oral arguments that there is a genuine issue as to one or more material facts and that defendants are not entitled to judgment as a matter of law, defendant's motion for summary judgment is hereby denied."

Where actionable constructive knowledge on the part of the defendant is asserted against the defendant and the case is considered on summary judgment, the latter would have the burden of proof by offering affirmative evidence to negate the existence of any knowledge of a defect or danger. Yet, this court's decisions in *Bright v. Food Giant*, 177 Ga. App. 641 (340 SE2d 272) (1986), and *Newman v. Ruby Tuesday, Inc.*, 184 Ga. App. 827 (363 SE2d 26) (1987) "hold that an allegation of constructive knowledge may be summarily rejected in a slip-and-fall case based upon the mere *absence* from the record of evidence tending to support the inadequate inspection theory of liability, rather than upon the *presence* of evidence tending to negate it." *Baldwin County Hosp. Auth. v. Coney*, 188 Ga. App. 339, 343 (373 SE2d 252) (1988). Also see *Shiver v. Singletary*, 186 Ga. App. 746 (368 SE2d 523) (1988), and cases cited therein. The majority opinion in *Shiver* sought and purported to overrule the two cases of *Bright v. Food Giant*, supra, and *Newman v. Ruby Tuesday, Inc.*, supra, and further stated, "They are hereby overruled." But, the whole court vote in *Shiver* was actually 4-1-4. The one vote, a special concurrence, indicated that "these two cases should not be overruled." Only four judges voted to overrule the two cases. After further consideration and study, we conclude that the majority position in *Shiver* was correct and that *Bright* and *Newman* must be overruled.

As stated in *Shiver* at 748-749, "the plaintiff, as respondent on motion for summary judgment, cannot properly be called upon to offer proof of actionable constructive knowledge on the part of the defendant until the defendant, as movant, has come forward with evidence tending to negate the existence of such knowledge." In the instant case, two of appellant's employees specifically stated that they had not inspected the area for safety purposes. This evidence did not eliminate all issues of fact with regard to constructive knowledge of

the hazard, and the trial court properly denied appellant's motion for summary judgment.

*Judgment affirmed. Carley, C. J., McMurray, P. J., Banke, P. J., Pope and Benham, JJ., concur. Birdsong, Sognier and Beasley, JJ., dissent.*

BIRDSONG, Judge, dissenting.

If the majority intends to overrule *Bright v. Food Giant*, 177 Ga. App. 641 (340 SE2d 272) and *Newman v. Ruby Tuesday, Inc.*, 184 Ga. App. 827 (363 SE2d 26), and to thus establish a rule of absolute liability upon proprietors for defective conditions or foreign substance hazards, then it will also have to overrule the underlying authority, *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327), as well as *Mitchell v. Food Giant*, 176 Ga. App. 705 (337 SE2d 353), and a host of other Georgia Supreme Court and Court of Appeals cases.

These cases are well founded; I have difficulty understanding the source of the perceived need to overrule them, or how it can be lightly done. In *Alterman Foods v. Ligon*, supra, the Supreme Court asseverated that in foreign substance/hazardous conditions cases the plaintiff must show "an act or omission on the part of the defendant *which was the proximate cause of his injury . . .*" (emphasis supplied; id. p. 624); and that the proprietor is "not [an insurer of his customer's safety] in this state" (id. p. 624) and is not to be held liable under a theory of constructive knowledge (by failure to inspect) unless he had an opportunity to discover and remove the hazard. Id. pp. 622-623. These are general principles of negligence law that apply equally to this case.

Secondly, the majority is incorrect on the facts where it states that "two of appellant's employees specifically stated that they had not inspected the area for safety purposes."

No such statement, specific or implied, was made. The employees, who were the county's maintenance supervisor and a worker, testified affirmatively that they inspected for beautification purposes, but *neither* employee ever said or implied he had not inspected the area for safety purposes. In fact, the maintenance supervisor specifically stated that he *generally inspected the grounds each week to be sure there were no holes or dangerous areas, and would repair a cracked sidewalk "if it was a hazard where somebody would get hurt or cause . . . damage."* The worker affirmed he was told by the supervisor to inspect the grounds and that he did so, but he did not say that he never inspected for safety purposes.

Moreover, only a few days earlier the worker had traversed this same spot with a lawnmower without any problem and with nothing unusual to capture his attention but a few ordinary brown spots in the grass, not shown to be unlike the many other apparently harmless

brown spots he had seen on the grass. In my view, this act by itself constituted as good an "inspection" as anything suggested by the plaintiff, for the plaintiff has not suggested any kind of inspection that would have uncovered this hole.

Further, the substantive law newly created by the majority upon this misstatement of the facts completely eviscerates the summary judgment law. It creates a dangerous precedent that in effect places the entire burden of proof upon a defendant to absolutely disprove negligence or superior knowledge even where the plaintiff cannot rebut with any evidence that there was negligence or superior knowledge. In all cases such as this, of which we see hundreds, the defendant will as a mater of procedural law always be denied summary judgment despite the plaintiff's complete inability to muster any proof of negligence at the threshold, and these cases will go to a jury upon evidence that will not sustain a plaintiff's verdict if he gets one.

Thus, I see the summary judgment procedure being destroyed in this state, or effectively removed from a defendant's grasp, despite his presentation of a prima facie case and the complete failure of the plaintiff to produce anything in rebuttal.

1. The evidence in this case should be more fully stated. The hole that appeared beneath Medlock measured about two feet across by one and one-half feet deep. About a week earlier, a county maintenance man had mowed that area; despite patches of brownish grass and a crack in the nearby sidewalk, the ground appeared to be normal and the employee had no idea there was a hole beneath it.

This employee had seen smaller holes, or "bumpy stuff," in many places on the courthouse lawn and had diligently worked to cover them, for he had previously worked at a golf course and was accustomed to smooth areas. He had been told to inspect or look over the grounds and did so, mainly to see if they needed tending. He had noticed "[t]hese brown places like this and the yellow color that was in the front yard [of the jailhouse]" and went over the whole place looking for mole crickets, "which [cause] dead spots just like this"; he knew if he "wet the [ground] very very much they'd come up and I'd find them," which later he did, and "got some stuff to take care of them. . . ." The maintenance worker further testified that he had seen "some [brown] spots like that made by mole crickets," but that he knew a mole cricket did not make this hole, and he said: "I'd hate to see the mole cricket [that would have made this hole]."

The maintenance man viewed the hole the next work day after the plaintiff fell in it, and peered into it, expecting to see ground water suggesting a "wash-out" but the hole was "dry like powder . . . just as dry as sand and dirt," and the soil in the hole "looked to be good, dark dirt, dark soil which is good for growing grass." While examining the hole on this occasion, he cut the grass away around the

hole and discovered that the hole extended under that grass and beneath the sidewalk less than five feet away; but while picking or cutting away the remaining grass, he found "the grass part was very thick. I mean it wasn't like it was real thin, you know, but it was thick. And then when I cut it is when it dropped. But, when I tried to pick it out *I liked to never got it out by myself because there was so much dirt on the bottom of this grass. It wasn't — whatever caused it didn't come right up to the edge of the ground. It was still thick. [There was a thick turf that had been over that hole?] Yes, sir. All the rest that I cut out was very thick.*" (Emphasis supplied.)

This witness testified further that *before* he cut away this surrounding grass and discovered the hole extended beneath it, he got his lawnmower and "mowed over it. And I mowed the rest of it . . . not thinking I'd fall in or anything like that. But, then whenever I cut it out, well, I stopped and I looked in that hole and I said, Man, this — I stuck my arm in there and I said, Boy, what a hole. *But, I went ahead and mowed and everything was fine.* I didn't dream that they had a hole like there was up side of that sidewalk — from there back to the sidewalk. I couldn't —*it just puzzled me when I [saw] that hole under there after I dug it out. Because it felt firm. My mower didn't shake the ground or anything. I just mowed back and to like there wasn't nothing to it.*" (Emphasis supplied.)

The county maintenance director testified that he inspected the grounds about once a week and presumed he did so within the week preceding Medlock's fall, but could not remember specifically. He testified he inspected for beautification purposes. However, he also clearly testified that he performed a general inspection of the area around the moonshine still to *"make sure the grass was cut and there was no holes or anything danger [sic] like that"*; and that he had seen cracks in the courthouse sidewalks and "there's cracks all over the sidewalk around the courthouse," and *that he would repair the sidewalk if it was causing a problem or "[i]f it was a hazard where somebody would get hurt or cause . . . damage."* (Emphasis supplied.) But, he stated he had never known a crack "that size to indicate some type of hidden danger," and that he could not recall any other occasion in his whole life that he "found grass dead because there was a hollow spot underneath the earth."

Throughout these employees' testimony, there was not a piece of evidence as to what caused the hole. The maintenance supervisor and his worker each stated clearly they did not know. The maintenance supervisor testified the sidewalk crack, as shown in a photograph, appeared to be an old crack; that he had examined the grounds and there was no drainage problem around the jail; that whenever grass appeared to be dead he would fertilize it and water it; and that he had no idea whether the hole which exhumed itself had happened

"overnight."

The maintenance worker was closely examined by plaintiff in an unsuccessful attempt to elicit a competent statement that the presence of dead grass would indicate a hidden hole, as follows: he stated that he had mowed back and forth around the hole before he discovered the hole extended underneath where he was mowing, and "everything was fine. . . . Q. The only thing to indicate, then, that there might have been a hole there was the dead grass? A. Well. . . . Q. And that might not indicate a hole. That could have meant a disease in the grass. A. Right. Q. But, it meant something was wrong there? A. Right. But, we had lots of spots that was speckled. You'd be mowing and hit a real green patch of grass and then it would be bare like this table. Q. Did you have any other spots that was several feet big as these were — or this spot was? A. Well, see, whenever [I was] mowing it really looked all green, you know, just mowing. But, then when you just really stopped and looked at it you could see brown places. But, it wasn't — I would imagine it was like this, but I don't remember it."

The plaintiff contends that merely because he (erroneously) has asserted proof of a failure of the defendant to properly inspect the grounds, the burden is thus cast upon defendant to show or prove it could not have had constructive knowledge of the concealed defect. The flaw in this reasoning, however, is that a breach of a duty to inspect gains the plaintiff nothing unless, as with any other breach of duty, it is shown to have *caused* the plaintiff's injury. See *Alterman Foods v. Ligon*, supra, p. 624.

This case is devoid of any evidence as to what caused the concealed hole to form. No inference can be made that the hole could have been discovered because there is not any evidence beyond sheer speculation that it existed prior to the moment the grass collapsed beneath Medlock, and of course there is no telling how long it existed. Moreover, there is not even any evidence that a hole, or a hole-causing disease, caused the brownish color of this grass, or caused a crack to form in the sidewalk nearby, or that there was any connection at all between the hole and the crack and brown spot. Therefore, neither of these conditions can be said to be "notice" of a concealed danger.

2. The plaintiff in this case is urging, in effect, that wherever it appears impossible for the plaintiff to muster a showing that the defendant had superior knowledge of the defect, the defendant must shoulder the equally impossible burden to prove it did not. This has never been the law in Georgia, and it does not become the law so as to deny summary judgment to a defendant on the confused grounds that as movant he bears an absolute burden of proof.

The defendant has the burden on its motion for summary judgment to prove it can conclusively negate at least one element entitling

the plaintiff to recover under any theory fairly drawn from his pleading and prove there is no material issue of fact. *P. F. Collier, Inc. v. Dreesen*, 128 Ga. App. 64 (195 SE2d 766); *Turner v. Noe*, 127 Ga. App. 870 (195 SE2d 463). But when the defendant has thus shown a prima facie right to judgment, the burden is then cast on the plaintiff to produce rebuttal evidence, or else concede the grant of defendant's motion. *Stephens County v. Gaines*, 128 Ga. App. 661 (197 SE2d 424).

This procedural structure is well established and the reason for it is obvious: the plaintiff has the burden to prove his case in the first instance, and when it is shown by the defendant that he cannot do so, there is no point in sending the case to a jury, for there is no reason to assume the plaintiff can do at trial what he is unable to do upon the defendant's prima facie challenge.

A procedural construction which places the burden upon the defendant to disprove what the plaintiff has not shown he can ever prove, virtually destroys the summary judgment procedure, for it will send every case to the jury despite the plaintiff's inability to muster proof of his claim. Such a result is clearly not what the legislature intended. See *Scales v. Peevy*, 103 Ga. App. 42 (118 SE2d 193). If the defendant is forced to disprove what the plaintiff finds it impossible to prove, then defendants will always be denied the right to summary judgment *in the very cases where it is most deserved.* At this juncture, summary judgment motion by a defendant becomes a useless procedure except for the plaintiff, who can use it deftly to keep alive a suit he can never prove at trial.

The summary judgment procedural rules apply equally to all negligence cases whether engendered by the presence of a "foreign substance" or by a concealed defective condition, or by actual malfeasance. Recently, in *West End Investments v. Hills*, 188 Ga. App. 274, 276 (372 SE2d 665), we held again: " 'When a motion for summary judgment is made and supported as provided in (OCGA § 9-11-56), an adverse party may not rest upon the mere allegations . . . of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must *set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him.' [Cit.] " ' " ' *When the (defendant-)movant for summary judgment presents evidence apparently destroying the plaintiff's cause of action, the movant has met his burden,* and the burden then shifts to the plaintiff to present any alternative theories, if such exist, which would support his action and within which genuine issues of fact remain.' [Cit.]" ' " (Emphasis supplied.)

In *Celotex Corp. v. Catrett*, 477 U. S. 317, 322 (106 SC 2548, 91 LE2d 265), the United States Supreme Court said: *"In our view, the*

*plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.* In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.*" (Emphasis supplied.) See also *Wilson v. Nichols*, 253 Ga. 84, 86 (316 SE2d 752).

Certainly any case of this kind could be laid before a jury (see dissent, *Mitchell v. Food Giant*, supra, p. 710), but in *Alterman Foods v. Ligon*, supra, the Supreme Court held that when the defendant in one of these cases makes a motion for summary judgment, *"[i]t is the duty of each party at the hearing on the motion for summary judgment to present his case in full"* (emphasis supplied) id. p. 625; and although the burden of establishing the nonexistence of any genuine issue of material facts rests upon the defendant-movant, when the motion is supported as provided in OCGA § 9-11-56 (e), the plaintiff *"may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."* (Emphasis supplied.) Id.

If the defendant's evidence is sufficient to pierce the pleadings of the plaintiff, *the burden shifts to the plaintiff "to produce issuable negligence or suffer judgment."* (Emphasis supplied.) Id.

*There was absolutely nothing to put the defendant on notice of a concealed hole in this case.* The ordinary brown spots on the grass and the nearby sidewalk crack were not even shown to be connected to the hole. There is not even any evidence that there was a hole until the plaintiff fell in it; there is no evidence as to what caused the hole, no evidence as to what caused the grass to be brown, and no evidence as to what caused the sidewalk crack. A worker had mowed the same area the week before, and the grass did not collapse beneath him and his mower. After the hole caved in, he mowed the surrounding area without any thought that it too might collapse and the earth did not even tremble, although unbeknownst to him there was a hole extending beneath it. In short, there is not a single piece of evidence that would indicate the defendant should have guessed there was a hole beneath the grass before it collapsed beneath the plaintiff, or that there was a hole-causing disease in the grass.

The plaintiff is utterly unable to show defendant had actual knowledge that a certain patch of brownish grass among many on the courthouse lawn, and one certain crack among many cracks in the sidewalk, concealed a hole; therefore, he is obliged to rely upon the theory of constructive knowledge, by notice. This, he says, is proved or shown by defendant's failure to "properly" inspect for safety purposes, but he fails completely to even suggest what might have constituted a "proper" inspection or what, if anything, such an inspection would have revealed.

At the basis of the majority's opinion in this case lies an earlier unsuccessful attempt to overrule *Bright*, supra, and *Newman*, supra. In the inconclusive minority opinion in *Shiver v. Singletary*, 186 Ga. App. 746, 747 (2) (368 SE2d 523), in which most of the present majority concurred, and which Presiding Judge Deen now adopts and Judge Benham now joins in theory, this statement is made: "A lack of actionable constructive knowledge is normally established in [foreign substance] cases by evidence or [sic] compliance with reasonable inspection and/or cleaning procedures. . . ." However, this statement is seriously flawed if (as seems to be the case) it is used to mean that *evidence of constructive knowledge arises unless defendant can show reasonable inspection and/or cleaning procedures.* This is because even outright proof of a failure to inspect (which does not exist in this case) proves nothing if there is no evidence that an "inspection" would have enabled the defendant to discover the concealed defective condition, such that his failure to discover and correct it was *causative* of the plaintiff's injury. *Alterman Foods v. Ligon*, supra, pp. 622-623, 624.

Even though the plaintiff has not suggested there was anything to discover, he urges that *the defendant* should be forced to prove what a "proper" inspection would involve, how and to what extent the area should have been "tested," or how deep the defendant should have dug before it discovered something (whatever that might be), or at what point it could have given up without discovering anything. By this time the defendant will have been forced to prove the plaintiff's entire case for him, and then disprove it, before ever proving a prima facie case for summary judgment. The defendant, and all others similarly situated, might as well forget about summary judgment and go to trial, however flimsy may be the plaintiff's case.

In fact, the trial court and the majority have held here that since the defendant cannot prove what, if anything, was concealed beneath the grass any better than the plaintiff could, the case goes to trial. Yet, at trial the plaintiff will bear all these burdens of proof. If he gets a verdict despite his inability to bear this burden, he will not be able to sustain it by a single fact, for it will be based on sheer speculation.

This case admirably proves the procedural wisdom of requiring the plaintiff to respond in rebuttal once the defendant has borne its burden as movant in summary judgment. The plaintiff owes this burden of rebuttal fairly, for he will have to bear the burden of proof at trial; and if he cannot sustain the burden to rebut in reply to a motion for summary judgment, there is no reason to assume he could bear the burden of proof at trial. *Celotex Corp. v. Catrett*, supra.

I would find that the trial court clearly erred in failing to grant summary judgment to the defendant, and in finding that there was a single fact that would have provided an inference of constructive knowledge of a concealed defective condition. And I do not believe we can or should overrule *Bright* or *Newman*, supra, unless we are prepared to ask the Supreme Court to overrule *Alterman Foods v. Ligon* and *Mitchell v. Food Giant*, supra, and the entire body of negligence law and summary judgment law of this state.

I respectfully dissent. I am authorized to state that Judge Sognier joins in this dissent.

DECIDED JULY 13, 1989 —
REHEARING DENIED JULY 28, 1989 — 

*Memory, Thomas, Walker & Sweat, Bruce M. Walker*, for appellant.
*Delman L. Minchew, C. Edwin Rozier*, for appellee.