A95A1641. HOLBROOK et al. v. EXECUTIVE CONFERENCE
CENTER, INC. et al.
A95A1642. EXECUTIVE CONFERENCE CENTER, INC.
v. HOLBROOK et al.
(464 SE2d 398)

McMURRAY, Presiding Judge.

Plaintiffs Alfred Holbrook and Carolyn Holbrook, individually and as parents and next friends of Alfred Holbrook II, a minor, brought this tort action against defendants Executive Conference Center, Inc. ("Executive"), as well as the Dayton (Ohio) Public Schools a/k/a Dayton Public School District ("Dayton Public Schools"), the Dayton Board of Education, and Leroi M. Hall (collectively "the Ohio defendants"), after the 13-year-old Alfred Holbrook II nearly drowned when he was found "at the bottom of the deep end" in a swimming pool "owned and operated . . . on the premises . . ." of Executive's conference center in Fulton County, Georgia. Alfred Holbrook II was a guest of Executive while "participating in a school band trip organized, sponsored and supervised by the Defendants, Dayton Public Schools and Dayton Board of Education." At the time Alfred Holbrook II entered the shallow end, the swimming pool "was in violation of the applicable Fulton County Health Department Code, including but not limited to § 30-2-9-6." Executive was further negligent in the maintenance and operation of the pool "in that the break line between the shallow end of the pool and the deep end of the pool was inadequately differentiated and/or marked." According to the amended complaint, defendant Leroi M. Hall "negligently failed to properly supervise the minor Plaintiff and failed to exercise reasonable care for the safety of the minor Plaintiff."

Executive admitted that Alfred Holbrook II was its guest on August 31, 1991, but denied the material allegations of negligence, asserting that it "adequately instructed and warned Plaintiff Alfred Holbrook II of any alleged risks associated with the use of the pool in question." In the joint answer of the Ohio defendants, the Dayton Public Schools and the Dayton Board of Education admitted that defendant "Leroi M. Hall, at all times relevant herein, was acting as the agent and/or employee of the defendant Dayton Public Schools," but each denied all allegations of negligence or liability.

After a period of discovery, Executive filed a motion for summary judgment, arguing that plaintiffs "cannot establish a prima facie case of negligence." The Ohio defendants filed their own joint motion for

summary judgment, arguing that the 13-year-old Alfred Holbrook II "assumed the risk of injury." In support of the various contentions, the following evidence was adduced: Alfred Holbrook II "had basic swimming skills." He was not afraid of the water. When he entered the shallow end of Executive's pool, no lifeguard was in attendance, and "there was no life line suspended across the water in the pool." He "had no plan or intention to swim into the deep end of the pool." It is not Alfred Holbrook II's "usual practice or habit while swimming to swim past a life line or into the deep end." At no time did he "voluntarily enter the deep end of the pool." His only plan was to swim across the width of the pool, "staying in the shallow end." Alfred Holbrook II knew to look for "a line across or [to] look to the side and see numbers on the side that say how deep it is" to determine the shallow end from the deep end. He does not know how he came to be found floating face down in the deep end but "remember[s] walking [in waist-high water] over toward the other side of the pool[, . . . i.e.,] the other side of the shallow part, [but does not] remember anything after that." However, Alfred Holbrook II expressly deposed that he "did not experience an asthma attack or any asthmatic symptoms" while in the pool or at any time that morning.

At all pertinent times, the pool safety provisions of the Fulton County Health Code required a qualified attendant trained in pool operation and first aid "to be on duty at or near the poolside at all times when a pool is open to use by bathers[, . . . with the] authority to enforce all rules of safety and sanitation." Fulton County Code Section 30-2-9-20. Section 30-2-9-6 (3) requires that life lines "shall be installed across the pool along the slope-break," denoting the end of the shallow area and the descent into the deep end. Moreover, Section 30-2-9-6 (3) further requires "[p]ermanent easily readable depth markings (minimum four-inch-high numbers) indicated in feet [to be] visible from both inside and outside the pool . . . on both interior sides of the pool above normal water level . . . (a) at the shallow end (b) at the slope break and (c) at the deep end." Photographs of Executive's pool (drained) show the absence of such interior depth markings. Jerry Kerce, an Environmental Health Specialist IV for the Fulton County Health Department and responsible for enforcement of Fulton County pool safety provisions, deposed that the presence of a life line suspended across the pool at all times during its use "is an absolute requirement." He explained the presence of the life line "to designate the slope break [is] important not only as a visible separation of the shallow end from the deep end, but also to warn swimmers where the slope break in the pool is located." Since the "slope of the floor of the pool can alter as much as four times the depth from the shallow end as compared to the deeper end[,] . . . a life line is an essential warning to any swimmer, adult or child, of the dramatic

change in depth. . . . The life line is also important because a swimmer may grab onto the life line if surprised by the change in depth." A swimming pool in Fulton County which has "depths in excess of five feet and does not have a life line installed in the pool is in violation of the Fulton County Health Code," which violation constitutes a misdemeanor. For purposes of Executive's motion, counsel stipulated that there was no life line across the pool "marking off the division between the shallow and deep end of the pool[;] . . . that there were no markings on the bottom of the pool which would indicate where the slope to the deep end begins[; and that the lack of a life line] was negligence per se because there is a Fulton County ordinance requiring such."

The trial court denied Executive's motion for summary judgment but granted that of the Ohio defendants. In Case No. A95A1641, plaintiffs appeal from the grant of summary judgment to the Ohio defendants. In Case No. A95A1642, Executive cross-appeals from the denial of its motion for summary judgment. *Held*:

## Case No. A95A1641

1. Plaintiffs contend the trial court erred in concluding that Alfred Holbrook II assumed the risk of injury as a matter of law. We do not reach the merits of this question. It appears that the grant of summary judgment to the Ohio defendants was correct, regardless of any factual question as to proximate cause. These defendants enjoy sovereign and official immunity under the authority of Art. I, Sec. II, Par. IX, subsection (d) of the Georgia Constitution of 1983 as amended, which is extended to them as a matter of comity. See *Univ. of Iowa Press v. Urrea*, 211 Ga. App. 564, 565 (2), 567 (440 SE2d 203).

"[S]upervision and control of students by teachers is a discretionary function. *Guthrie v. Irons*, 211 Ga. App. 502, 504-507 (439 SE2d 732) (1993); [cits.]." *Coffee County School Dist. v. Snipes*, 216 Ga. App. 293, 297 (454 SE2d 149). In the case sub judice, there are no allegations of wilfulness, malice, or corruption. " 'The record in the present case is utterly devoid of any conduct by ([Leroi M. Hall]) which could remotely be construed as being sufficient to lift the shield that protects public officers acting colore officii.' *Partain v. Maddox*, 131 Ga. App. 778, 785 (206 SE2d 618) (1974)." *McDay v. City of Atlanta*, 204 Ga. App. 621 (1), 622 (420 SE2d 75). Since Leroi M. Hall, in his official capacity as an agent for the Dayton Public Schools and the Dayton Board of Education, was "performing discretionary functions when the [near drowning] occurred, [each Ohio defendant is] immune from personal liability under subsection (d) of the 1991 amendment [to Art. I, Sec. II, Par. IX of the 1983 Georgia Constitution]." *Coffee County School Dist. v. Snipes*, 216 Ga. App. 293, 297,

supra. A judgment which is correct for any reason must be affirmed. *Shapiro v. Lipman*, 259 Ga. 85, 86 (377 SE2d 673); *Amwest Surety Ins. Co. v. RA-LIN & Assoc.*, 216 Ga. App. 526, 529 (1), 531 (455 SE2d 106).

### Case No. A95A1642

2. Executive enumerates the denial of its motion for summary judgment, contending plaintiffs failed to establish a prima facie case of negligence because they cannot make an affirmative showing of causation. Specifically, Executive argues there is no evidence "that the alleged absence of a 'life line' in the swimming pool or alleged negligent operation of the swimming pool contributed in any way to the alleged injury."

In the case sub judice, Executive's undisputed noncompliance with the Fulton County ordinance requiring the presence of a qualified attendant trained in first aid, requiring a life line as the demarcation of the shallow end from the deep end, and requiring permanent interior markings of the pool's depth "constituted negligence per se as relied on by the plaintiff[s]. [Cits.]" *Northwestern &c. Ins. Co. v. McGivern*, 132 Ga. App. 297, 301 (2) (208 SE2d 258). Accord *Walker v. Daniels*, 200 Ga. App. 150, 153 (1), 155 (407 SE2d 70). "Where a statute provides a general rule of conduct, although only amounting to a requirement to exercise ordinary care, the violation thereof is negligence as a matter of law, or negligence per se, whereas in the absence of such specific statute the jury is left to determine whether such conduct constitutes negligence. *Hollomon v. Hopson*, 45 Ga. App. 762 (3) (166 SE 45)." *Teague v. Keith*, 214 Ga. 853 (1), 854 (108 SE2d 489). Nevertheless, "even when negligence per se has been shown, proximate cause must still be proved. [Cits.]" *Central Anesthesia Assoc., P. C. v. Worthy*, 254 Ga. 728, 731 (2), 733 (333 SE2d 829). "[I]n order for a violation of a statute to be negligence per se, it is sufficient if the violation is capable of having a causal connection with the injury and damage inflicted. [Cit.] It is not essential that the injury inevitably flow from the violation." *Central Anesthesia Assoc., P. C. v. Worthy*, 254 Ga. 728, 731 (2), 733, fn. 3, supra.

The Fulton County ordinance in the case sub judice requiring the presence of a qualified attendant near Executive's pool, requiring a life line, and requiring the display of highly visible depth markings on the interior of the pool is intended to prevent precisely the type of accidental near drowning as sustained by Executive's invitee, Alfred Holbrook II. Such safety statutes "create a duty, the breach of which is inextricable from the proximate cause of the damage." *Central Anesthesia Assoc., P. C. v. Worthy*, 254 Ga. 728, 731 (2), 733, supra. Even though in the case sub judice there is no direct evidence as to

just how Alfred Holbrook II came to be floating face down in the deep end of Executive's pool when his last conscious intent was simply to wade from one side of the shallow end to the other, the jury would be authorized to infer that his near drowning would not have happened but for Executive's noncompliance with the applicable pool safety regulations. This circumstantial evidence of causation is sufficient to present a jury question. *Walker v. Daniels*, 200 Ga. App. 150, 155 (2), 157, supra.

Nevertheless, Executive argues that Alfred Holbrook II's own testimony that he was aware of the location of the deep and that he was aware at all times that no life line was present in the pool establishes his equal or superior knowledge, such that any "recovery is barred as a matter of law and the [trial court's order denying summary judgment] should be reversed." However, this contention is controlled adversely to Executive. The "jury would not be precluded from finding that the absence of the [statutorily mandated] safety equipment was the proximate cause of the [minor's injuries] merely because [he] entered the water voluntarily. The purpose of the [ordinance in the case sub judice] is clearly to protect any [invitee bather] who might suddenly have need of a life [line], regardless of whether he or she enters the water voluntarily or involuntarily." *Alexander v. Harnick*, 142 Ga. App. 816, 817 (2) (237 SE2d 221). "[I]t is as much the function of a [properly positioned life line] to rescue bathers in trouble . . . as it is to keep bathers from getting into a drowning condition." *Ward v. City of Millen*, 162 Ga. App. 148, 150 (290 SE2d 342). The 13-year-old Alfred Holbrook II's awareness of the physical circumstances does not necessarily establish the minor's complete appreciation of any attendant risk of harm, especially since the mandated safety features go to notice of possible danger. " ' "(K)nowledge of defect" should not be confused with "knowledge of danger." ' *Firestone Svc. Stores v. Gillen*, 58 Ga. App. 782, 787 (199 SE 853) (1938)." *Robinson v. Western Intl. Hotels Co.*, 170 Ga. App. 812, 813 (1), 814 (318 SE2d 235). The trial court correctly denied Executive's motion for summary judgment.

*Judgment affirmed in the main appeal and also in the cross-appeal. Beasley, C. J., Pope, P. J., Johnson, Blackburn and Ruffin, JJ., concur. Birdsong, P. J., Andrews and Smith, JJ., dissent.*

ANDREWS, Judge, dissenting.

Because I find that the Holbrooks cannot show that Executive's negligence was the proximate cause of Alfred Holbrook's accident, I must respectfully dissent.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most

favorable to the nonmoving party, warrant judgment as a matter of law. . . . A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a [genuine] jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. [Cit.] A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." (Emphasis omitted.) *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).

"On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is *more likely than not* that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." (Citation and punctuation omitted; emphasis supplied.) *Nelson v. Polk County Historical Society,* 216 Ga. App. 756, 757 (456 SE2d 93) (1995), quoting Prosser and Keaton on Torts (5th ed. 1984), p. 269, § 41.

Further, there are no disputed issues of fact to go to a jury. It is undisputed that the last time anyone saw Alfred, he was in the shallow end of the pool. No one heard him cry for help. No one saw him again until he was found unconscious in the deep end. Alfred himself says that the last thing he remembers was wading across the shallow end of the pool. In addition, the Holbrooks stress that at no time did Alfred go toward the deep end of the pool.

The speculations on which the plaintiffs rely are not sufficient to form a basis for the conclusion that Executive's negligence *more likely than not* was responsible for the accident. To deny summary judgment to Executive in this case would be to hold that since Executive cannot show that its negligence was not responsible for the accident, this case must go to trial. However, the Holbrooks will bear the burden of proof at trial and even if they get a favorable verdict, they "will not be able to sustain it by a single fact, for it will be based on sheer speculation." *Ware County v. Medlock,* 192 Ga. App. 542, 550 (385 SE2d 429) (1989) (Birdsong, J., dissenting).

In upholding the trial court's denial of Executive's motion for

summary judgment, the majority appears to be applying the doctrine of res ipsa loquitur. However, plaintiffs do not claim, and the facts are not consistent with, res ipsa loquitur. This court, in finding that res ipsa loquitur did not apply in similar circumstances where a boy drowned and was found in the deep end of the pool, held that "drowning is not an occurrence that is within itself sufficient to indicate that it must have been brought about by negligence on the part of someone. It is just as likely to happen as the result of accident, which is negligence of no one." *Y.M.C.A. v. Bailey*, 112 Ga. App. 684, 693 (146 SE2d 324) (1965).

A different result is not required by *Walker v. Daniels*, 200 Ga. App. 150 (407 SE2d 70) (1991), cited by the majority. The issue in that case was not *how* the deceased came to drown, but rather the inattentiveness of the lifeguard and whether the victim could have been rescued if "due diligence had been exerted."[1] *Walker*, supra at 156.

Accordingly, for the reasons discussed above, I would find that the trial court erred in denying Executive's motion for summary judgment.

I am authorized to state that Presiding Judge Birdsong and Judge Smith join in this dissent.

SMITH, Judge, dissenting.

I join Judge Andrews' dissent, but I also believe there are other reasons to disagree with the majority.

There is no evidence that any act of negligence *caused* Alfred Holbrook's near drowning. There has been *no* explanation regarding how or why he ended up at the bottom of the pool in the deep end. The majority focuses on the lack of a life line at the slope break. Even if the line was required by Fulton County, however, there is no evidence that the lack of one caused the near drowning. In fact, Holbrook admitted that even though the line was not inside the pool, he knew where the deep end was located. Moreover, when he entered the pool, he had no concern about avoiding the deep end. He "wasn't even thinking about it." Also, there is no evidence that Alfred Holbrook was unable to swim.

There is no evidence, in my opinion, creating a factual issue regarding causation. "An inference cannot be based upon evidence which is too uncertain or speculative *or which raises merely a conjec-*

---

[1] It should be noted that there is no requirement that there be a lifeguard on duty at the pool. The Fulton County Health Code section quoted in the majority's opinion merely requires that: "A qualified attendant should be on duty at or near the poolside at all times when a pool is open to use by bathers and shall be available during all department pool inspections." Fulton County Code Section 30-2-9-20.

*ture or possibility.*" (Citations and punctuation omitted; emphasis supplied.) *Moore v. Winn-Dixie Stores*, 216 Ga. App. 72 (454 SE2d 532) (1995). The Holbrooks simply offered no explanation regarding causation in response to appellant's motion for summary judgment. Because the Holbrooks have not pointed to evidence of causation beyond mere conjecture or possibility, I would reverse the trial court's ruling.

I am authorized to state that Presiding Judge Birdsong and Judge Andrews join in this dissent.

DECIDED NOVEMBER 17, 1995 — 

*Appelbaum & LaRoss, Diane F. LaRoss*, for appellants.
*Powell, Goldstein, Frazer & Murphy, Joseph D. Wargo, Richard C. Mitchell*, for appellees.