S96Q1285. HAMILTON et al. v. CANNON et al.
(482 SE2d 370)

HUNSTEIN, Justice.

The mother, child and administrator of the estate of Kim Orlena Hamilton brought suit in the United States District Court for the Middle District of Georgia asserting state and federal causes of action arising out of Hamilton's death at a city swimming pool in Montezuma. Plaintiffs named as defendants Macon County, its sheriff, one of its deputy sheriffs, the City of Montezuma, the manager of the city swimming pool, and a lifeguard at that pool.

Construed in a light most favorable to plaintiffs as the respondents on motion for summary judgment, *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2 474) (1991), the record reveals that Hamilton collapsed as she exited the waters of a City of Montezuma swimming pool. The lifeguard at the pool caught her and placed her on the deck where a pool patron began administering CPR. There was testimony indicating that Hamilton was responding to the CPR. An emergency telephone call was placed and a Macon County deputy sheriff arrived on the scene. The deputy ordered everyone to clear away and the pool patron applying CPR complied, thus ceasing her CPR efforts. CPR was resumed when the city police chief arrived and was continued by emergency medical technicians until doctors pronounced Hamilton dead at the hospital emergency room.

In their complaint, plaintiffs asserted that the county defendants were liable based upon the affirmative act of gross negligence allegedly committed by the deputy sheriff when he interrupted a private rescue attempt without providing a meaningful alternative. Plaintiffs asserted the city defendants were liable based upon the negligent hiring, training, and supervision of the pool staff; the failure to control horseplay at the pool which led to Hamilton being thrown into the water; and the failure to intercede after the deputy sheriff interrupted the private rescue effort. The district court granted summary judgment to all defendants based on its application of the public duty doctrine in *City of Rome v. Jordan*, 263 Ga. 26 (426 SE2d 861) (1993). Plaintiffs appealed that ruling and, in *Hamilton v. Cannon*, 80 F3d 1525 (11th Cir. 1996), the Eleventh Circuit Court of Appeals submitted four state law questions for resolution by this Court. The questions certified by the Eleventh Circuit are:

(1) Does the "public duty doctrine" established in *City of Rome* apply outside the police protection context and in the circumstances of this case?

(2) Does the *City of Rome* public duty doctrine apply to affirmative acts of negligence, such as those alleged in this case, in addition to failures to act?

(3) Does the "reliance prong" of the *City of Rome* special relationship test require an objective manifestation of assent by the plaintiff, or may assent be inferred from the reliance of others or from the circumstances of this case?

(4) Does the *City of Rome* special relationship test apply when a law enforcement officer acts with gross negligence in performing duties at the scene of an emergency, as is alleged in this case, such that the officer would not otherwise be shielded from liability by OCGA § 35-1-7?

1. In *City of Rome*, supra, this Court addressed whether the municipality and a member of its police department were liable to plaintiff, an assault victim, for the failure to respond to an emergency call made by members of the victim's family who had telephoned police when they learned a man they feared posed a threat of harm to the plaintiff's safety was at the plaintiff's home. This Court adopted the public duty doctrine to hold that a municipality may not be held liable for its failure to provide police protection based on a general duty to protect the public. Id. at 28. This Court recognized that a municipality may be held liable for a failure to provide police protection where the plaintiff can show the existence of a special relationship that could be established by a three-prong test set forth in the opinion. Id. at 29. Applying that special relationship test, we held that the municipal defendants were entitled to summary judgment because the plaintiff's evidence failed to establish one of the required prongs.

This Court subsequently addressed the public duty doctrine in *Dept. of Transp. v. Brown*, 267 Ga. 6 (3) (471 SE2d 849) (1996), an opinion rendered two months after the Eleventh Circuit certified the questions in this case. This Court rejected the DOT's assertion that it had no liability in the absence of a special relationship between the DOT and the plaintiff's decedent, a car collision victim. This Court unanimously ruled that "[o]ur decision in [*City of Rome*] was directed squarely and only at the duty owed by a governmental entity to provide police protection to individual citizens" and that the nature of that case "warrants limitation of the public duty doctrine adopted in [*City of Rome*] to the situation involved there." Id. at 8 (3).

Our opinion in *Brown* is conclusive as to the first certified question from the Eleventh Circuit: the public duty doctrine adopted in *City of Rome* is limited to the situation in that case and thus does not apply outside the police protection context. Accordingly, we answer the first certified question in the negative.

2. Our resolution of the first question renders it unnecessary for us to address the remaining questions, all of which are premised upon the extension of the public duty doctrine outside the police pro-

tection context.

Questions answered. All the Justices concur, except Fletcher, P. J., Sears and Hines, JJ., who dissent.

FLETCHER, Presiding Justice, dissenting.

Although an argument can be made for limiting the public duty doctrine to police nonfeasance, no one on this Court has made it. Instead, in an answer that is shorter than the question raised, the majority decides that the public duty doctrine is limited to the "police protection context." The opinion offers no explanation or support for its holding other than a citation to a case that also states a result without any persuasive reasoning. The complex issues connected with the public duty doctrine deserve a more thoughtful discussion. Because the majority unnecessarily and unwisely limits the public duty doctrine, I dissent.

## THE SCOPE OF THE PUBLIC DUTY DOCTRINE

1. In *City of Rome v. Jordan*,[1] this Court addressed whether city police officers owed a duty to a sexual assault victim to respond to an emergency request for help. Adopting the public duty doctrine, we held that a municipality may not be liable for its failure to provide police protection based on a general duty to protect the public. Instead, a special relationship between the injured party and the governmental tortfeasor must exist that sets the individual apart and engenders a special duty owed to that individual by the municipality. To establish a special relationship, the plaintiff must show "(1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party; (2) knowledge on the part of the municipality that inaction could lead to harm; and (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking."[2] Applying the special relationship test to the facts in *Jordan*, we concluded that the City of Rome was entitled to summary judgment because Patricia Jordan failed to show that she relied on police to dispatch a vehicle to her home in response to telephone calls that others made from another house.

The decision in *Jordan* gave two reasons for adopting the public duty doctrine. First, the special relationship requirement restricted the government's liability for the actions of third parties in a way

---

[1] 263 Ga. 26 (426 SE2d 861) (1993).
[2] Id. at 29.

similar to the restriction of a private party's liability for the actions of a third party.[3] Second, providing police protection is " 'a resource-allocating function that is better left to the discretion of the policy makers.' "[4] Thus, we adopted the doctrine to protect public employees from unreasonable liability and to protect governments from unreasonable interference with policy decisions.[5]

The majority opinion today ignores both reasons for adopting the public duty doctrine. Unlike other states that have adopted the public duty doctrine, this Court limits it to the police protection context. This result excludes other public employees who are charged with protecting the general public from the actions of third persons in emergency situations, such as firefighters. It also exposes police officers to liability when their actions fall "outside the police protection context," whatever that term means. It apparently does not cover many routine actions that police officers undertake to protect the public, including the deputy sheriff's exercise of crowd control in this case.

Moreover, the majority's reliance on *Dept. of Transp. v. Brown*[6] as its sole authority is unpersuasive. In a one-paragraph discussion, this Court declined in *Brown* to apply the public duty doctrine to allegations that the Georgia Department of Transportation was negligent in designing and operating a highway. Although there were myriad ways to distinguish *Jordan*, this Court stated that "the essential difference" in *Jordan* was "the involvement of third parties whose behavior may be unpredictable."[7] In a cursory analysis, the decision concluded that the difference in duties "warrants limitation of the public duty doctrine adopted in *Jordan* to the situation involved there, the provision of police services."[8]

In retrospect, this "distinction" makes no sense since both police departments in responding to reports of crime and DOT planners in designing highways have to deal with the unpredictable behavior of human beings. Moreover, neither police nor DOT have more than a general duty to control the conduct of third persons. Not only is the analysis in *Brown* unsound, but its holding is ambiguous on whether the public duty doctrine applies to police protection or to police ser-

---

[3] See Restatement (Second) of Torts, § 315 (1965) (duty to control conduct of third persons).

[4] *Jordan*, 263 Ga. at 28 (quoting *Kircher v. City of Jamestown*, 543 NE2d 443, 445, 544 NYS2d 995 (1989)); see generally 18 Eugene McQuillan, The Law of Municipal Corporations, § 53.04.25 (3d rev. ed. 1993) (listing five reasons for the public duty doctrine).

[5] See *White v. Beasley*, 552 NW2d 1 (Mich. 1996).

[6] 267 Ga. 6 (471 SE2d 849) (1996).

[7] Id. at 8.

[8] Id. at 8-9.

vices. Thus, nothing in the *Brown* decision conclusively answered the first certified question on the scope of the public duty doctrine.

Based on the dangerous nature of police work and our reasons for adopting the public duty doctrine, I disagree with the majority's holding that the doctrine is limited to police protection. Instead, consistent with both *Jordan* and *Brown*, I would hold that the public duty doctrine applies to police and other public employees who provide police services.[9] These services include preserving public order; promoting public health, safety, and morals; and preventing, detecting and punishing crime.[10] This definition protects public employees who provide police services from unreasonable liability and protects local governments from unreasonable interference with their decisions on allocating limited community resources.

## LIABILITY OF COUNTY DEFENDANTS

2. The plaintiffs allege that the county was negligent in one way: deputy sheriff Duncan interrupted a private rescue without providing a meaningful alternative. Because I believe the public duty doctrine should encompass the provision of police services, I would apply it to the deputy sheriff's actions in this case. Specifically, Duncan is a law enforcement officer who performed traditional police services when he responded to the call for an ambulance, turned on his siren and blue lights while driving to the pool, and exercised crowd control at the emergency scene.

### Affirmative Acts of Negligence

3. The claim against the county is based on allegations that Duncan's affirmative acts of negligence made Hamilton's injuries worse. In *Jordan*, we left open the question whether a special duty is required despite evidence of an affirmative act of negligence.[11] I conclude that the public duty doctrine should apply to affirmative acts of negligence as well as the failure to act.[12] It is difficult to distinguish

---

[9] See, e.g., *Tilley v. City of Hapeville*, 218 Ga. App. 39 (459 SE2d 567) (1995) (applying public duty doctrine in suit against city police officer who responded to radio bulletin about a vehicle abandoned on the interstate highway); *Landis v. Rockdale County*, 212 Ga. App. 700 (445 SE2d 264) (1994) (applying public duty doctrine in suit against deputy sheriff who observed, but failed to stop, intoxicated driver).

[10] Black's Law Dictionary 1041 (5th ed. 1979); see also OCGA § 35-1-7 (defining law enforcement officer as a peace officer who gives "his full time to the preservation of public order or the protection of life and property or the prevention of crime").

[11] See *Jordan*, 263 Ga. at 27, n. 3.

[12] See *Commerce &c. Ins. Co. v. City of Toledo*, 543 NE2d 1188, 1194 (Ohio 1989) ("The

between acts of misfeasance and nonfeasance,[13] and the same behavior can be alleged as either a negligent act or a negligent failure to act. For example, if a police officer stopped a drunk driver and then released him or her, a person later injured by that driver could sue the officer either for failing to arrest the drunk driver (a failure to act) or for permitting the drunk driver to drive away (an affirmative act). Moreover, despite the greater likelihood of courts finding liability when a public employee commits an affirmative act of negligence,[14] that result is no reason for basing the duty owed to the public on the type of negligence alleged. Finally, the nature of the negligent act is more relevant to the issue of whether a special relationship exists than whether a special relationship is required.[15] For these reasons, I would evaluate allegations of affirmative acts of negligence as part of the special relationship analysis.

### Special Relationship

4. In determining whether the plaintiff established that Hamilton and the deputy sheriff had a special relationship, I do not believe that this Court is limited to the special relationship test set forth in the *City of Rome v. Jordan*.[16] As stated in footnote four of the *Jordan* opinion, we did not determine in that case "whether a special duty may exist even in the absence of a special relationship where a police officer is present at the scene of a crime, has the knowledge and the resources to act to the benefit of the injured party, yet does not act."[17] That footnote suggests that a police officer may have a special duty to a specific individual without meeting the requirements of the special relationship test established in *Jordan*.

Although a person generally does not have a duty to assist other persons in danger,[18] a person who undertakes a rescue generally has

---

applicability of the public duty rule does not depend upon whether the allegations against the municipality may be characterized as nonfeasance or as misfeasance."); *Powell v. District of Columbia*, 602 A2d 1123, 1128 (D.C. 1992) (doctrine applies to employees' actions as well as its inactions); see also *Ruiz v. Pardue*, 204 Ga. App. 566, 567 (420 SE2d 1) (1992) (tort liability of employees of statutory employer under workers' compensation law is not based on whether the employee's negligence is "active" or "passive").

[13] W. Page Keeton et al., Prosser & Keeton on the Law of Torts, § 56 at 373-375 (5th ed. 1984).

[14] Prosser & Keeton on Torts, § 131 at 1049-1050.

[15] See *Allison Gas Turbine Div. v. District of Columbia*, 642 A2d 841, 844 (D.C. 1994) (acts of affirmative negligence relate to the requirement of justifiable reliance under special relationship test).

[16] *Jordan*, 263 Ga. at 29.

[17] Id. at 29, n. 4.

[18] See *Crook v. Ga. Farm &c. Ins. Co.*, 207 Ga. App. 614 (428 SE2d 802) (1993) (no duty

a duty not to increase the harm.[19] Section 323 of the Restatement (Second) of Torts states that one who undertakes to render services to another, which he should recognize as necessary for the protection of the other person, is subject to liability if he fails to exercise reasonable care and this failure increases the risk of harm. Addressing the duty of one who takes charge of a helpless person, section 324 provides that the person who takes charge "is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him." Thus, under the Good Samaritan doctrine, a rescuer voluntarily assumes a duty to avoid affirmative conduct that makes the condition of the helpless person worse.

Since I believe these principles generally should apply to public employees as well as private citizens, I conclude that a police officer creates a special duty under the public duty doctrine when the officer voluntarily assumes a duty to act for the protection of injured persons at an emergency scene.[20] This duty is based not on a general duty to protect the public; rather, it is based on the specific actions of the police officer at the scene of the emergency in exercising control over an identifiable individual and voluntarily undertaking to assist that person. Like private persons who act as Good Samaritans, police officers who engage in the rescue of an injured person have a special duty not to make that person's situation worse or affirmatively increase the harm associated with that person's circumstances.[21]

Applying this ruling, I conclude that the facts viewed in the light most favorable to the plaintiff establish a special relationship between Hamilton and deputy sheriff Duncan that sets Hamilton apart from the general public and engenders a special duty owed by the county to her. Specifically, the plaintiff alleges that the private rescuer was administering CPR and Hamilton was responding positively to it when deputy sheriff Duncan assumed control of the emergency scene and ordered the rescuer to clear away. The plaintiff further alleges that Duncan did not attempt to administer CPR himself or allow anyone else to administer it for several minutes and that the delay made Hamilton's condition worse. Based on these facts, I would hold that Duncan had a special duty to not worsen Hamilton's condi-

---

to rescue); *Alexander v. Harnick*, 142 Ga. App. 816 (237 SE2d 221) (1977) (a person has no duty to rescue another from a perilous situation that the former did not cause).

[19] Prosser & Keeton on Torts, § 56.

[20] See *Cracraft v. St. Louis Park*, 279 NW2d 801, 806 (Minn. 1979).

[21] See *Ramundo v. Town of Guilderland*, 485 NYS2d 388 (App. Div. 1985).

tion by stopping an ongoing, private rescue effort that may have had successful results, without offering a reasonable alternative.

This analysis is consistent with the rationale behind the public duty doctrine. Once Duncan had specifically identified Hamilton as a member of the public who needed assistance and took charge of her perilous situation, neither Duncan nor the sheriff's department was engaged in a "resource-allocating" function. Moreover, finding a special relationship in this case is consistent with the liability exposure of a private party for the actions of a third party.

Because I find that a special relationship existed between Hamilton and the deputy sheriff, it is not necessary to reach the issue of detrimental reliance raised in the third certified question. By not reaching the detrimental reliance prong of the *Jordan* test, I do not mean to foreclose the possibility that the detrimental reliance prong could be satisfied under the circumstances of this case.

## Claims of Gross Negligence

5. OCGA § 35-1-7 addresses the liability of law enforcement officers who perform duties at the scene of an emergency. It provides:

> A law enforcement officer shall not be liable at law for any action or actions done while performing any duty at the scene of an emergency except for gross negligence, willful or wanton misconduct, or malfeasance. As used in this Code section, the term "law enforcement officer" means any peace officer who is employed by this state or any political subdivision thereof and who is required by the terms of his employment, whether by election or appointment, to give his full time to the preservation of public order or the protection of life and property or the prevention of crime. Such term shall include sheriffs and deputy sheriffs.

By its terms, the statute does not create a duty. Instead, it provides immunity from liability where a duty exists.[22]

Just as I would determine that the public duty doctrine applies to allegations of affirmative acts of negligence, I would hold that allegations of gross negligence are not exempt from the public duty doctrine. As illustrated by this case, there often is no difference between evidence of negligence and gross negligence and, although not bind-

---

[22] See *Anderson v. Little & Davenport Funeral Home*, 242 Ga. 751 (251 SE2d 250) (1978) (interpreting statute granting immunity to providers of ambulance services).

ing on this Court, other states generally have not distinguished between negligence and gross negligence in applying the public duty doctrine.[23] This refusal to distinguish between the two types of allegations prevents the plaintiff's description from controlling the duty owed by a public employee.

## LIABILITY OF CITY DEFENDANTS

6. In their first amended complaint and response to the city's motion for summary judgment, the plaintiffs allege that the city was negligent in (a) hiring, training, and supervising the pool staff; (b) failing to control the horseplay that caused Hamilton to be thrown into the water; and (c) failing to intercede after the deputy sheriff interrupted the private rescue effort. The first allegation deals with the city's policies and practices; the remaining two allegations address the lifeguard's and pool manager's actions at the swimming pool.

(a) In *Jordan*, we did not address the plaintiff's additional allegation that the Rome police department was negligent in training radio dispatch officers because that claim did not deal with the duty of police officers to respond to emergency requests for help.[24] Implicit in that decision was the conclusion that the public duty doctrine does not apply to a claim of negligence in training emergency personnel. I would expressly decide today that the public duty doctrine does not apply to claims for negligent hiring, training, and supervision of public employees. Unlike the emergency situations in which a police officer is required to make a split-second decision about a course of action to protect individuals, the government makes a more deliberate and informed decision in hiring or training personnel. In that situation, no special duty is required in addition to the general duty of government to hire qualified personnel, provide adequate training, and exercise competent supervision. As a result, the public duty doctrine does not apply to Hamilton's claim against the city for negligent hiring, training, and supervision of pool personnel.

(b) The remaining issue is whether Hamilton must show a special relationship with the lifeguard and pool manager under the public duty doctrine. As in the negligent hiring claim, I would refuse to extend the public duty doctrine to the negligence claims against the employees at the city-operated swimming pool. Unlike police, the

---

[23] See *Cryan v. Town of Ware*, 597 NE2d 1352, 1354, n. 3 (Mass. 1992) (alleging firefighters were grossly negligent in fighting fire); *Moseley v. L & L Constr.*, 472 SE2d 172, 176 (N.C. App. 1996) (public duty doctrine bars claims of gross negligence).

[24] *Jordan*, 263 Ga. at 30.

pool personnel have no duty to protect the general public; their responsibility is limited to the members of the public who are attending the swimming pool. The city had made its decision on allocating its limited resources when it chose to open the Hill Street pool, hired a pool manager to operate it, and invited the public to use it. By these actions, the city gave a general assurance to persons who entered the facility that its employees would protect them from harm, rescue swimmers in trouble, and help injured persons.[25] Without addressing the duty required of the lifeguard,[26] I would decide only that the public duty doctrine does not apply to the negligence claims against him, the pool manager, or the City of Montezuma.

In conclusion, I agree with the majority opinion that the public duty doctrine does not apply to the actions of the city's pool manager, lifeguard, or hiring personnel since none of the claims against the city involves police services. I disagree, however, that the public duty doctrine established in *City of Rome v. Jordan* is limited to the police protection context. Instead, I would hold that the public duty doctrine applies to the claims against the county, but that a special relationship was established between Hamilton and the deputy sheriff under the circumstances of this case.

I am authorized to state that Justice Sears and Justice Hines join in this dissent.

DECIDED MARCH 21, 1997.

*Wolfe & Steel, L. David Wolfe, Bodker, Ramsey & Andrews, Stephen C. Andrews, David J. Maslia,* for appellants.

*Jones, Cork & Miller, Thomas C. Alexander, William T. Prescott, Smith, Welch, Studdard & Brittain, Shawn M. Story, Ellis, Easterlin, Peagler, Gatewood & Skipper, George M. Peagler, Jr., John T. Croley, Jr.,* for appellees.

---

[25] See *Ward v. City of Millen*, 162 Ga. App. 148, 150 (290 SE2d 342) (1982) (describing lifeguard's functions).

[26] See, e.g., *Walker v. Daniels,* 200 Ga. App. 150 (407 SE2d 70) (1991) (discussing duty of lifeguard, college employees, and college towards swimmers in pool).