A95A0065. HARRIS et al. v. TATUM.
(455 SE2d 124)

BIRDSONG, Presiding Judge.

Appellants/defendants Dr. Sterling Harris and Dr. Wiley S. Black appeal from the verdict and judgment in favor of appellee/plaintiff Mildred Tatum. Pursuant to advice of Dr. Black, appellee underwent a diagnostic procedure known as an angiogram which was performed by Dr. Harris. The same day with the concurrence of Dr. Black, Dr. Harris performed a balloon angioplasty on appellee; balloon angioplasty is an invasive surgical procedure in which a catheter is inserted into a large vein and a balloon is threaded to the blocked area and inflated thereby squeezing the plaque or blockage against the walls of the blood vessel and enlarging the blood flow path. During the course of the angioplasty, plaque from the treatment site was pushed or became lodged into lower blood vessels and/or blood clots formed occluding the blood flow to appellee's left leg and right foot. This medical complication was not remedied timely, requiring the amputation of appellee's right foot by a vascular surgeon.

Appellee ultimately was fitted with a prosthesis.

Appellee brought a damage suit for medical malpractice and battery. Appellants filed a motion for partial summary judgment as to the issue of informed consent; the motion was denied. Following transfer of the case to another county, appellants filed a motion in limine to exclude any evidence or mention of general consent or of a violation of the informed consent statute; the motion was denied. At the conclusion of the evidence appellants moved for a directed verdict on the issue of consent. The trial court granted appellants' directed verdict as to the issue of informed consent but denied the motion as to the general consent issue. The jury returned a $500,000 verdict in favor of appellee/plaintiff but failed to specify whether it was rendered against one or both appellants. After being recharged, the jury returned a second verdict in favor of appellee and separately against each appellant in the amount of $250,000. The jury was again recharged and returned a verdict in favor of appellee and against both appellants in the amount of $500,000. The jurors were polled and confirmed their verdict; judgment reflecting the final verdict was entered. *Held*:

1. Appellants enumerate that the trial court erred in denying their motion in limine on the issues of consent, in denying their motion for directed verdict on the issue of general consent, and in charging the jury on the issue of battery. In support of these claims appellants assert, inter alia, that adequate general consent existed as a matter of law.

(a) By granting appellants' motion for directed verdict as to the issue of informed consent, the trial court rendered moot any claim of error in denying its motion in limine as to this issue. To be entitled to judgment reversal, appellants must affirmatively establish, by the record, error which has hurt them. *Whelchel v. Thomas Ford Tractor*, 190 Ga. App. 156 (1) (378 SE2d 510). Appellants have failed to establish that any fair risk exists that the jury's subsequent verdict in favor of plaintiff was contributed to by the denial of their motion in limine as to informed consent.

(b) "[A]ny unauthorized and unprivileged contact by a doctor with his patient in examination, treatment or surgery would amount to a battery." *Mims v. Boland*, 110 Ga. App. 477, 482 (138 SE2d 902). But, " '[a]s a general rule there can be no tort committed against a person consenting thereto, if that consent is free and not obtained by fraud, and is the action of a sound mind.' " Id. at 482 (1) (a). Appellants claim that by signing a written consent, which by its plain wording authorized appellants to perform whatever additional medical procedures they deemed warranted, a valid and binding general consent must be conclusively presumed thereby entitling appellants to a directed verdict on the issue of general consent and precluding the

existence of a battery as a matter of law.

As to general consent, OCGA § 31-9-6 (d) provides: "A consent to surgical or medical treatment which discloses in general terms the treatment or course of treatment in connection with which it is given and which is duly evidenced in writing and signed by the patient or other person or persons authorized to consent pursuant to the terms of this chapter shall be conclusively presumed to be a valid consent in the absence of fraudulent misrepresentations of material facts in obtaining the same." A valid general consent negated any claim of battery in *Hutcheson v. McGoogan*, 162 Ga. App. 657 (292 SE2d 527) and *Winfrey v. C & S Nat. Bank*, 149 Ga. App. 488 (254 SE2d 725). Compare *Cole v. Jordan*, 161 Ga. App. 409 (288 SE2d 260).

Appellee/plaintiff signed a written consent which, although not expressly consenting to angioplasty, contains, inter alia, the following: "I understand that during the course of the procedure described above [angiogram/aortogram/run off] it may be necessary *or* appropriate to perform *additional procedures* which are unforeseen or not known to be needed at the time this consent is given. I consent to and authorize the persons described herein to make the decisions concerning such procedures. I *also* consent to and authorize the performance of such *additional procedures* as they deem necessary *and* appropriate." (Emphasis supplied.) This language is ambiguous as to whether consent is given only to those additional procedures as are both necessary *and* appropriate, or as to additional procedures which are either necessary *or* appropriate, and, whether if two different classes of additional procedures exist, within which class balloon angioplasty is included. As the consent form reflects that it is that of the Radiology Department of Lanier Park Hospital, and as there generally exists an inequality of bargaining position as between a medical patient and an admitting hospital or physician, any ambiguity in the consent document should be construed as against appellants. Accordingly, the scope of consent contained in this general provision must be construed as encompassing only those additional procedures which were both necessary and appropriate when rendered. See *Zurich American Ins. Co. v. Bruce*, 193 Ga. App. 804, 807 (2) (388 SE2d 923); cf. *Law v. Cheek-Law*, 258 Ga. 190 (366 SE2d 680); *Hall v. Skate Escape*, 171 Ga. App. 178, 180 (319 SE2d 67). The word "necessary" shall be attributed only its usual and common signification (see OCGA § 13-2-2 (2)), to-wit: "being essential, indispensable, or requisite." Webster's Encyclopedic Unabridged Dictionary of the English Language (1989).

The standards for directed verdict and judgment n.o.v. are the same; where there exists no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed. *Pendley v. Pendley*, 251 Ga. 30 (1) (302 SE2d 554). The evi-

dence in this case is in conflict as to the material issue of whether balloon angioplasty was a "necessary" medical procedure. Accordingly, the trial court did not err in denying appellants' motion in limine and motion for directed verdict, or in instructing the jury as to battery. We will not reverse the correct ruling of a trial court regardless of the reason given therefor. *Nat. Consultants v. Burt*, 186 Ga. App. 27, 33 (2) (366 SE2d 344).

*Hutcheson*, supra, *Cole*, supra at 409 (3) (Division 3 physical precedent only), and *Winfrey*, supra, none of which involve a consent form requiring additional procedures to be both appropriate *and* necessary, are not controlling. Likewise, *Johnson v. Srivastava*, 199 Ga. App. 696 (405 SE2d 725), while instructive, is not controlling.

(c) Appellants, however, contend that appellee was advised of the possibility of angioplasty by nurses in appellant Dr. Black's office, and that such knowledge, from whatever source acquired, is sufficient to establish appellee's consent as a matter of law. Appellants' reliance on *Parr v. Palmyra Park Hosp.*, 139 Ga. App. 457, 460 (228 SE2d 596) is misplaced. *Parr*, supra, holds that where the consent form is inadequate to explain the general course of treatment to be taken, or where there is no written consent, summary judgment could still be obtained by establishing that the plaintiff-patient knew, from any source, the general course of treatment to be undertaken. However, the real issue in the case at bar is not whether the general course of treatment was adequately explained as to the type or types of procedure to be used, but whether the record establishes as a matter of law that balloon angioplasty was "necessary," as required by the terms of the ambiguous consent provisions pertaining to additional procedures. Assuming arguendo appellee knew of the possibility that angioplasty was one of the additional procedures to which she might be subjected, provided necessity so demanded, a genuine issue of material fact remained whether such "necessity" existed as required by the consent form executed by appellee. Even if appellee may have known in general terms the course of treatment which might occur in accordance with the terms specified in the consent form, it cannot be concluded on the posture of this record that she *understood* additional procedures ever would be *undertaken* in the absence of an existing necessity therefor. *Holbrook v. Schatten*, 165 Ga. App. 217 (299 SE2d 128), where the record clearly established that the patient knew and understood from her conversations with her physician the general course of treatment to be *undertaken*, is not controlling.

Moreover, in *Parr*, supra, and *Holbrook*, supra, the issue was not whether plaintiff consented to the treatment undertaken but whether plaintiff had been properly informed of the risk of treatment. See *Johnson*, supra at 698.

2. Citing, inter alia, *Brannen v. Prince*, 204 Ga. App. 866 (4) (421

SE2d 76) (physical precedent only), appellants contend the trial court erred in admitting hearsay, during cross-examination of appellants' medical expert, from a professional journal not shown to be authoritative.

The expert conceded his knowledge of the Journal of Post-Graduate Medicine by testifying that he recognized it as being "good for medical students." It can be reasonably inferred from this testimony that the journal was a good student *text* (compare *Brannen*, supra at 874 (special concurrence)). Unless the journal was considered authoritative, within the meaning of *Brannen*, supra and *Pound v. Medney*, 176 Ga. App. 756 (337 SE2d 772), it could not be deemed a text that would be good for medical students. *Brannen*, supra at 874. However, assuming arguendo that appellee failed to lay an adequate foundation for the cross-examination of appellants' expert as to the statement contained in the journal, we find such error harmless. The question at issue posited that of all patients with intermittent claudication, 75 percent show either improvement or stabilization of condition without invasive treatment. Appellants' expert characterized the statement as being too broad and gave medical examples to support his opinion. Further, appellee's expert previously had testified without objection that 80 percent of patients who have only claudication will not suffer serious complications, and their disease will remain stable over the course of their life. As substantially the same evidence was already before the jury without objection, any hearsay as to this matter would be merely cumulative and harmless. *Calhoun v. State*, 213 Ga. App. 375, 376 (2) (444 SE2d 405); *Platt v. Nat. Gen. Ins. Co.*, 205 Ga. App. 705, 709-710 (1) (c) (423 SE2d 387); OCGA § 9-11-61.

3. Appellants concede that the first two verdicts were improper and that the trial court properly rejected them and recharged the jury; however, without citation of authority, they contend the trial court erred in its recharge as to the form of the verdict following the second improper verdict. The trial court can refuse to receive an improper verdict and recharge the jury in a manner which would facilitate putting the verdict in proper form. *Ga. American Ins. Co. v. Mills*, 187 Ga. App. 128, 131 (5) (369 SE2d 768). But appellants contend the trial court in its challenged recharge in effect adopted the prior improper verdict of the jury that appellants were joint tortfeasors. Examining the recharge in its totality and in light of all previous charges (*Taylor v. State*, 195 Ga. App. 314 (1) (393 SE2d 690)), we find the trial court did not adopt any portion of the prior improper verdicts; we find no indication the court erroneously assumed certain facts and intimated to the jury what it believed the evidence to be. Cf. *Turner v. State*, 259 Ga. 873 (2) (388 SE2d 857).

Appellants assert that the trial court's previous recharge on battery would cause the jury to equate the acts of the doctor to those of a

bully. Viewing the charge in its totality and in context with the other charges (*Taylor*, supra), we find this contention without merit.

Appellants' various contentions in support of their enumerations of error are without merit.

*Judgment affirmed. Johnson and Blackburn, JJ., concur. Smith, J., not participating.*

DECIDED MARCH 10, 1995.

*Forrester & Brim, Weymon H. Forrester, Richard C. Bellows*, for appellants.

*Cook, Noell, Tolley & Wiggins, J. Vincent Cook*, for appellee.

