A99A0302. GILLIS et al. v. CARDIO TVP SURGICAL
ASSOCIATES, P.C. et al.
A99A0619. GILLIS et al. v. MEDICAL CENTER OF
CENTRAL GEORGIA.
(520 SE2d 767)

RUFFIN, Judge.

Lonnie Gillis sued Cardio TVP Surgical Associates, P.C. ("CSA"), Dr. I. J. Shaker, the Medical Center of Central Georgia (the "hospital") and Jay Livingston for battery, negligence per se, and medical malpractice.[1] According to Gillis, his left leg was permanently

---

[1] Gillis' wife also asserted a claim for loss of consortium which is not at issue here.

injured by Livingston, a physician's assistant who operated on Gillis' leg during a coronary bypass operation performed by Dr. Shaker.

CSA, Dr. Shaker and Livingston (hereinafter the "CSA defendants") moved for partial summary judgment on the battery claim, and Gillis moved for partial summary judgment on both the battery and negligence per se claims. The trial court granted the CSA defendants' motion and denied Gillis' motion. The hospital filed a motion for summary judgment on all of Gillis' claims, and the trial court granted the motion. In Case No. A99A0302, Gillis contends that the trial court erred in denying his motion for partial summary judgment against the CSA defendants and in granting the CSA defendants' motion for partial summary judgment. In Case No. A99A0619, Gillis challenges the trial court's grant of summary judgment in favor of the hospital. As the two cases involve the same facts, we have consolidated them for this appeal. For reasons which follow, we affirm in part and reverse in part.

"Summary judgment is appropriate only when the movant establishes that no issues of material fact remain to be tried and the undisputed facts, viewed in the light most favorable to the non-movant, warrant judgment as a matter of law." *Terry v. Collins*, 230 Ga. App. 646, 647 (497 SE2d 395) (1998). So viewed, the record establishes that Dr. Shaker is a cardiovascular surgeon who practices with CSA. Livingston is employed by CSA as a physician's assistant. Since 1986, he has been certified in accordance with the Physician's Assistant Act, OCGA § 43-34-100 et seq., and he is authorized to assist Dr. Shaker.

On September 16, 1994, Dr. Shaker performed a four-vessel aortocoronary bypass operation on Gillis. Prior to surgery, Gillis signed a consent form which provided, in pertinent part, that Gillis consented to the performance of the bypass operation "by *Dr. Shaker* [inserted by hand] and any other physicians *or other medical personnel* who may be involved in the course of [Gillis'] treatment." (Emphasis supplied.)

During the bypass operation, Dr. Shaker operated on Gillis' chest while Livingston simultaneously operated on Gillis' leg to harvest the saphenous vein that was used for the bypass. Gillis maintains that, while operating on his leg, Livingston injured "the left saphenous nerve distribution off of [his] left femoral nerve," resulting in permanent nerve damage.

*Case No. A99A0302*

1. Gillis contends that the trial court erred in granting summary judgment to the CSA defendants on his claim for battery. "Any unauthorized and unprivileged contact by a doctor with his patient in

examination, treatment or surgery [amounts] to a battery." (Punctuation omitted.) *Harris v. Tatum*, 216 Ga. App. 607, 608 (1) (b) (455 SE2d 124) (1995). However, a patient's valid consent to the contact negates any claim of battery. Id. at 609. Such consent is valid if it is "free and not obtained by fraud, and is the action of a sound mind." (Punctuation omitted.) Id. at 608.

Gillis asserts that he never consented to have a physician's assistant harvest his saphenous vein. The CSA defendants, on the other hand, argue that by signing the consent form authorizing "other medical personnel" to perform procedures, Gillis expressly consented to Livingston's participation in the bypass operation. We find that issues of fact remain as to whether Livingston was authorized by law to harvest saphenous veins and, if so, whether Gillis validly consented to Livingston's performance of that procedure on him.

(a) As an initial matter, we must address Livingston's authority to harvest Gillis' saphenous vein. In support of his claim that he did not consent to having Livingston harvest his vein, Gillis argues that Livingston exceeded the scope of his authority under the Physician's Assistant Act. According to the CSA defendants, Livingston, as a trained physician's assistant under the direct supervision of Dr. Shaker, was authorized to perform the procedure. In granting summary judgment to the CSA defendants on the battery count, the trial court essentially concluded that Livingston was authorized to perform this procedure *as a matter of law*. We disagree.

The Physician's Assistant Act, OCGA § 43-34-100 et seq., establishes rules governing the practice of physician's assistants in this state. The legislature enacted the Act "to encourage the more effective utilization of the skills of physicians by enabling them to delegate health care tasks to such assistants where such delegation is consistent with the patient's health and welfare." OCGA § 43-34-101 (b). However, there are limits to a doctor's ability to delegate to a physician's assistant.

Generally, a physician's assistant may perform tasks specified in his job description after the job description has been approved by the Composite State Board of Medical Examiners (the "Board"). See OCGA §§ 43-34-26.1 (b) (1) (A) and (4); 43-34-103 (g); 43-34-105. Here, however, Livingston's job description does not specify that he is authorized to harvest saphenous veins. Thus, the only Code section that might authorize Livingston to harvest Gillis' vein is OCGA § 43-34-105, which provides, in pertinent part, that

> nothing in this Code section shall make unlawful the performance of a medical task by the physician's assistant, whether or not such task is specified in the general job description, when it is performed under the direct supervi-

sion and in the presence of the physician utilizing him.

Although this language could be read as giving a physician the authority to delegate *any* "medical task" to a physician's assistant so long as the physician is present and supervises the procedure, we do not believe that this provision contains such a broad grant of authority. The statute is phrased in the negative. Although the statute does not itself make it unlawful for a physician's assistant to perform delegated tasks in the presence of the doctor, it does not give a physician carte blanche to delegate any and all tasks to an assistant. To hold otherwise would allow a brain surgeon to delegate brain surgery, or a neurosurgeon to delegate a spinal fusion, or a plastic surgeon to delegate rhinoplasty, all with impunity.

We do not conclude, as a matter of law, that Livingston exceeded the scope of his authority in harvesting Gillis' saphenous vein. As a physician's assistant, Livingston has been trained to harvest veins and, in fact, had performed the procedure numerous times during his 11 years with Dr. Shaker. Moreover, according to Andrew Watry, Executive Director of the Board, physician's assistants "routinely assist in performing coronary bypass surgery by harvesting the saphenous vein under the supervision of the attending physician." Thus, a jury could conclude that Livingston was authorized by OCGA § 43-34-105 to harvest Gillis' vein. We do not believe, however, that the extent of Livingston's authority is susceptible to summary adjudication. There is a spectrum of tasks that potentially could be performed by physician's assistants. At one end of the spectrum, there are tasks that are clearly authorized by statute, such as the ordering of "dangerous drugs, medical treatments, [and] diagnostic studies." OCGA § 43-34-26.1 (b) (2). At the other end of the spectrum are tasks that are clearly beyond the authority of a physician's assistant. What we have here is a task that falls somewhere along the middle of the spectrum. Rather than declaring that such a procedure is authorized as a matter of law, we believe it raises a question of fact best left to jurors, who must decide whether a particular physician's assistant has the requisite skill level and training to perform a task not specifically approved by the Board.

(b) Even if Livingston was authorized by law to harvest Gillis' saphenous vein, he still may be liable for battery if Gillis did not validly consent. The CSA defendants assert that, by signing a consent form containing the words "other medical personnel," Gillis consented to having a physician's assistant harvest his vein and, thus, has no claim for battery. Although a "valid general consent [negates] any claim of battery," *Harris*, supra at 609 (1) (b), there is an issue of fact as to whether Gillis gave valid consent to have *Livingston* perform such a procedure.

Pursuant to OCGA § 31-9-6 (d),

[a] consent to surgical or medical treatment which discloses in general terms the treatment or course of treatment in connection with which it is given and which is duly evidenced in writing and signed by the patient or other person or persons authorized to consent . . . shall be conclusively presumed to be a valid consent in the absence of fraudulent misrepresentations of material facts in obtaining the same.

OCGA § 31-9-6.1 sets forth the information a doctor must disclose to patients in obtaining their consent. Subsection (d) states that a doctor's "failure to comply with the requirements of this Code section shall not constitute a separate cause of action but may give rise to an action for medical malpractice." OCGA § 31-9-6.1 (d). We do not believe that this subsection abrogates the general rule that a medical professional who performs unauthorized, unprivileged surgery commits a battery. *Harris*, supra. Rather, this subsection merely recognizes that where a doctor obtains valid consent, but fails to provide each disclosure required by OCGA § 31-9-6.1, the failure to strictly comply with OCGA § 31-9-6.1 does not give rise to a separate cause of action for battery. Thus, for a battery claim, the issue remains whether the doctor obtained *valid* consent.

In determining whether Dr. Shaker obtained valid consent for Livingston to harvest Gillis' vein, the signed consent form is presumed valid "in the absence of fraudulent misrepresentations of material facts in obtaining the same." OCGA § 31-9-6 (d). As this Court recently noted in *Cleveland v. Albany Urology Clinic, P.C.*, 235 Ga. App. 838 (509 SE2d 664) (1998),

[w]here a confidential relationship exists, as here, a person's silence when he should speak, or his failure to disclose what he ought to disclose, is as much a fraud in law as an actual affirmative false representation. . . . Where a patient suffers injury at the hands of a physician as a result of consent to treatment obtained through the physician's misrepresentation, non-disclosure, or concealment of a material fact which the patient has a right to know, the patient may recover damages.

(Citations and punctuation omitted.) Id. at 840 (1). Thus, a consent based upon failure to disclose material facts which a patient has a right to know is not valid and cannot satisfy OCGA § 31-9-6 (d).

The trial court apparently concluded that, as a matter of law, Dr. Shaker had no duty to disclose and/or Gillis had no right to know the role that Livingston would play in his surgery. Once again, we dis-

agree. OCGA § 43-34-106 mandates that "[a]ny physician, clinic, or hospital using a physician's assistant shall post a notice to that effect in a prominent place." Inherent in this notice requirement is the idea that patients have a right to know when they are dealing with a physician's assistant rather than a physician. Although this Code section does not require a physician to include such notice on a surgical consent form, it is not unreasonable to expect that this type of information would be included. Thus, we cannot say, as a matter of law, that Dr. Shaker had no duty to disclose Livingston's major role in Gillis' surgery. In addition, we cannot conclude, as a matter of law, that Livingston's role was immaterial. Rather, we believe these are questions of fact for a jury. See *Bailey v. Belinfante*, 135 Ga. App. 574, 575-576 (2) (218 SE2d 289) (1975) (scope of consent a jury issue).

Because issues of fact exist regarding the scope of Livingston's authority and the scope and validity of Gillis' consent, the trial court erred in granting summary judgment to the CSA defendants on the issue of battery, but properly denied Gillis' motion for summary judgment on this claim. See *Lloyd v. Kramer*, 233 Ga. App. 372, 375 (1) (503 SE2d 632) (1998).

2. Gillis contends the trial court erred in granting summary judgment in favor of the CSA defendants on his claim of negligence per se.[2] "Where a statute provides a general rule of conduct, although only amounting to a requirement to exercise ordinary care, the violation thereof is negligence as a matter of law, or negligence per se." (Punctuation omitted.) *Holbrook v. Exec. Conference Center*, 219 Ga. App. 104, 107 (2) (464 SE2d 398) (1995).

Gillis bases his claim upon the CSA defendants' alleged failure to post the notice required by OCGA § 43-34-106, which mandates that "[a]ny physician, clinic, or hospital using a physician's assistant shall post a notice to that effect in a prominent place." However, Gillis admittedly never went to Dr. Shaker's office prior to his surgery. Thus, Gillis cannot establish that the CSA defendants' alleged violation of OCGA § 43-34-106 could have had any causal connection with the injury he claims to have sustained. "[E]ven when negligence per se has been shown, proximate cause must still be proved." (Punctuation omitted.) *Holbrook*, supra. Accordingly, the trial court properly granted the CSA defendants' motion for summary judgment on the negligence per se claim.

### Case No. A99A0619

3. Gillis also argues that the trial court erred in granting sum-

---

[2] Gillis also contends that the trial court erred in denying his motion for summary judgment on this claim.

mary judgment to the hospital on his negligence per se claim.[3] Gillis maintains that he did not see any posted notices at the hospital regarding the hospital's use of physician's assistants.[4] On the other hand, Mary Freeman, a Registered Nurse and Vice President of the Surgery Center for the hospital, testified that there is a notice, a "fairly small sign that just says that we use physician's assistants . . . in this facility . . ." posted at the entrance to the emergency center. However, Freeman could not state how long the notice had been posted or whether it was posted in 1994. Pretermitting whether Gillis established

> that [the hospital] breached its legal obligation to provide the notification[ ] required by OCGA § [43-34-106], [Gillis] must still be able to prove he suffered actual damages as a proximate cause of [the hospital's] negligence. Here, the record is clear that [Gillis'] claimed injury . . . did not proximately flow from [the hospital's] alleged negligent act.

(Citations and punctuation omitted.) *Ridgeview Institute v. Handley*, 224 Ga. App. 533, 536-537 (3) (481 SE2d 531) (1997).

The hospital has an obligation to post notices that *it* uses physician's assistants. According to the American Heritage Dictionary (2nd ed.), to use means to bring or put into service — to employ. Here, the hospital was not "using" Livingston as the hospital did not bring him into service or employ him. Additionally, there is no evidence that the hospital directed Livingston to harvest Gillis' saphenous vein. Rather, the record reflects that Dr. Shaker employed Livingston, whom Dr. Shaker directed and supervised. Thus, any notice that the hospital might have posted regarding its use of physician's assistants would not have put Gillis on notice regarding Dr. Shaker's use of a physician's assistant. "While proximate cause is ordinarily a question for the jury, plain and indisputable cases may be decided by the court as a matter of law." *Handley*, supra at 537. Because the hospital did not use Livingston, Gillis cannot link his injury to the hospital's alleged failure to post notice that it uses physician's assistants. Accordingly, the trial court properly granted the hospital's motion for summary judgment on the negligence per se claim.

4. Gillis' remaining tort claims against the hospital (battery and professional negligence) are premised upon the acts of Livingston,

---

[3] Gillis also asserts that the trial court erred in denying his motion for summary judgment on the negligence per se claim.

[4] In his brief, Gillis asserts that "[i]t is undisputed that no notices were posted." However, the testimony Gillis points to in support of this assertion merely shows that other people, like Gillis, had not seen the notice at the hospital.

who harvested Gillis' vein, and Dr. Shaker, who directed Livingston to harvest the vein. Neither Livingston nor Dr. Shaker is employed by the hospital. However,

> [u]nder the doctrine of apparent agency, a hospital may be held liable for the actions of . . . an independent contractor when (1) the hospital holds out the [independent contractor] as its agent, and (2) the patient's justifiable reliance on that holding out leads to injury.

*North Ga. Med. Center v. Stokes*, 238 Ga. App. 60 (517 SE2d 93) (1999).

Gillis' 28-page brief includes only four sentences in support of his contention that the hospital should be held liable. In those four sentences, Gillis fails to point to any evidence in the record to show how the hospital represented that Dr. Shaker was its agent or how Gillis relied upon any such representation. "It is well-settled that an appellate court will not cull the record in search of error on behalf of one of the parties." *Saffar v. Chrysler First Business Credit Corp.*, 215 Ga. App. 239, 240 (1) (450 SE2d 267) (1994); see also *Blackwell v. Goodwin*, 236 Ga. App. 861, 862 (1) (513 SE2d 542) (1999). Because Gillis failed to point to any evidence suggesting that the hospital should be held liable, we cannot say that the trial court erred in granting summary judgment in favor of the hospital.

In addition to urging respondeat superior liability, Gillis also argues that the hospital is liable for its own omissions. Gillis cites *Marsh v. Crawford Long Hosp. &c.*, 213 Ga. App. 262 (444 SE2d 357) (1994) for the proposition that the hospital "had a duty to Mr. Gillis to make sure that the person actually performing the operation had Mr. Gillis['] permission to perform the operation." We disagree.

As an initial matter, *Marsh* does not stand for the proposition cited. Where consent to a surgical procedure is required, it is the responsibility of the *physician* to ensure that consent is obtained. OCGA § 31-9-6.1 (c). Moreover, even if the hospital did have an affirmative obligation to ensure that Gillis consented to the procedure, it is undisputed that Gillis *did* sign a consent. Where a patient signs a consent form given to him by his doctor, it is not the function of the hospital to go behind the doctor to ensure that the doctor fully disclosed all pertinent information. As we recognized in *Marsh*, " '[a] hospital is *not* an insurer of patient safety.' " (Emphasis in original.) *Marsh*, supra at 264 (1).

*Judgment affirmed in Case No. A99A0619. Johnson, C. J., Pope, P. J., Smith and Eldridge, JJ., concur. McMurray, P. J., and Andrews, P. J., concur in the judgment only. Judgment affirmed in part and reversed in part in Case No. A99A0302. Johnson, C. J., Pope, P. J.,*

*Smith and Eldridge, JJ., concur. McMurray, P. J., and Andrews, P. J., concur in part and dissent in part.*

McMURRAY, Presiding Judge, concurring in the judgment only in part and dissenting in part.

In Case No. A99A0302, I respectfully dissent from the judgment of partial reversal. In my view of the undisputed circumstances of this case, the responsible physician lawfully delegated the task of harvesting the saphenous vein to a qualified physician's assistant, and this lawful delegation was impliedly consented to by the patient. Furthermore, the circumstantial evidence of the alleged failure to post notices that the hospital employed physician's assistants cannot overcome the direct evidence that such notice was given. Consequently, in Case No. A99A0619, I concur in the judgment only.

Plaintiffs Mr. and Mrs. Lonnie G. Gillis brought this tort action against defendants Cardio TVP Surgical Associates, P.C. ("CSA"), Dr. I. J. Shaker, the Medical Center of Central Georgia ("MCCG"), and Jay Livingston, alleging that during a four-vessel aortocoronary artery bypass operation, Dr. Shaker and Livingston committed battery when Dr. Shaker allowed defendant Livingston, a non-physician, to operate on Lonnie G. Gillis' left leg without plaintiff Lonnie G. Gillis' permission. The complaint further alleged medical malpractice because, as a result of medical negligence in that operation, nerves in plaintiff Lonnie G. Gillis' left leg were damaged and permanently injured. Defendants Dr. Shaker, MCCG, and CSA were allegedly liable for the acts and omissions of defendant Livingston. Plaintiff Mrs. Lonnie Gillis claimed loss of consortium. Upon cross-motions for partial summary judgment as to the claim of battery, the following undisputed facts were adduced:

Since 1986, Livingston has been certified by the Composite State Board of Medical Examiners ("the State Board") as meeting the requirements of the Physician's Assistant Act, OCGA § 43-34-100 et seq., and is authorized to assist Dr. Shaker. In 1987, Livingston was authorized by defendant MCCG to assist in surgery, review charts, make rounds, write verbal orders on charts for physician signature, assist the medical doctors with procedures, obtain patient histories, start or disconnect IVs, change dressings and remove drains, and remove sutures. Since that time, he has assisted Dr. Shaker during coronary bypass graft operations by harvesting saphenous veins and also learned to assist by sewing the vessels on the heart and the aorta and by helping Dr. Shaker close the chest.

Defendants CSA, Dr. Shaker, and Livingston further supported their motion with Livingston's certification from the State Board to serve as a physician's assistant ("PA") under the supervision of Dr. Shaker and the consent form signed by plaintiff Lonnie G. Gillis. The

letterhead of this two-page consent form expressly lists I. J. Shaker, M.D. and M. Jay Livingston, P.A.C., as CSA medical personnel. The form recites that plaintiff Lonnie G. Gillis had explained to him in general terms that he had coronary artery disease requiring coronary artery bypass grafting to remediate blocked arteries; that possible material risks resulting from this procedure included infection, loss of function of any limb or organ, brain damage or death; that if he did not have this procedure plaintiff Lonnie G. Gillis could suffer from continued angina, possible heart failure or death; and that the likelihood of success was only "Fair[.]" On the signature page, plaintiff Lonnie G. Gillis consented to the performance of the procedures described "by *Dr. Shaker* [inserted by hand] and any other physicians *or other medical personnel* who may be involved in the course of [plaintiff Lonnie G. Gillis'] treatment." (Emphasis supplied.)

Plaintiffs' cross-motion relied on the undisputed fact that defendant Livingston harvested the saphenous vein from plaintiff Lonnie G. Gillis' left leg for use in this particular bypass graft, making the initial incision with a "number ten blade." This was done in the presence of and under the supervision of Dr. Shaker, while Dr. Shaker performed the incision of the chest. Plaintiffs further relied on the undisputed fact that plaintiff Lonnie G. Gillis never expressly consented to defendant Livingston, as a physician's assistant, wielding a scalpel. Plaintiff Lonnie G. Gillis further deposed he "would not have consented to surgery by a physicians assistant had [he] known that one would be operating on [his] leg."

Plaintiffs also moved for partial summary judgment as to a claim of negligence per se, based on the alleged breach of OCGA § 43-34-106, directing that "[a]ny physician, clinic, or hospital using a physician's assistant shall post a notice to that effect in a prominent place." In support of this motion, plaintiff Lonnie G. Gillis deposed in an affidavit that there were "no notices posted in the Medical Center of Central Georgia that [he] saw notifying [him] of the use of physicians assistants." But in contrast, Mary Cassidy Freeman, a Registered Nurse and Vice President of the Surgery Center at defendant MCCG, testified that there is a notice, a "fairly small sign that just says that we use physician's assistants . . . in this facility . . ." posted at the entrance to the emergency center, although she did not know how long such notice had been there. Defendant Livingston testified he always wears his license or name tag that specifies his title as a physician's assistant on his laboratory coat (but not in the operating room) and introduces himself as a physician's assistant.

Defendant MCCG moved for summary judgment as to all claims against it, supporting its motion with the affidavit of Andrew Watry, Executive Director of the Composite State Board of Medical Examiners for the State of Georgia ("the Board"), who deposed that pursuant

to the Basic Job Description and the Rules and Regulations of the Composite State Board, defendant Livingston "would be authorized by the State Composite Board to harvest the saphenous vein in a patient undergoing coronary bypass surgery as long as Dr. Shaker was present in the operating room while [the physician's assistant] was harvesting the vein," assuming that harvesting the saphenous vein falls within the normal scope of practice of Dr. Shaker. As Executive Director of the Board, Andrew Watry is familiar with the fact that physician's assistants commonly assist surgeons in performing surgery, including actually performing a surgical procedure under the supervision of the attending physician, and this practice is authorized and accepted by the Composite State Board.

The trial court granted partial summary judgment in favor of defendants CSA, Dr. Shaker, and Livingston while denying plaintiffs' motions for partial summary judgment. In Case No. A99A0302, plaintiffs appeal from that grant of partial summary judgment. The trial court also granted a complete summary judgment in favor of defendant MCCG, and in Case No. A99A0619, plaintiffs appeal from that order.

1. The term "Physician's assistant" means a skilled person qualified by academic and practical training to provide patients services "not necessarily within the physical presence but under the personal direction or supervision of the applying physician." OCGA § 43-34-102 (5). Plaintiffs first enumerate the grant of partial summary judgments as to the claim of battery because neither plaintiff would have consented to surgery performed by a physician's assistant. In my view, this enumeration depends in part upon the lawfulness of Dr. Shaker's delegation and in part upon the scope of the consent form signed by plaintiff Lonnie G. Gillis.

(a)

> The relation of physician and patient is a consensual one, and a physician who undertakes to treat another without express *or implied* consent of the patient is guilty of at least a technical battery. [Cit.] Generally, it is settled law that an unauthorized surgical operation by a physician upon the body of [the] patient is a wrongful and unlawful act for which the surgeon will be held liable in damages. [Cits.]

(Emphasis supplied.) *Mims v. Boland*, 110 Ga. App. 477, 481 (1) (a) (138 SE2d 902). Conversely, "no tort can be committed against a person consenting thereto if that consent is free, is not obtained by fraud, and is the action of a sound mind." OCGA § 51-11-2.

The public policy of Georgia is to encourage the more effective utilization of the skills of physicians by enabling them to delegate

health care tasks to qualified assistants where such delegation is consistent with the patient's health and welfare. OCGA § 43-34-101 (b). Under OCGA § 43-34-105, a physician's assistant may perform the tasks detailed in the job description as approved by the State Board, but nothing in this Code section shall make unlawful the performance of a medical task by the physician's assistant not specified in the general job description when it is performed under the direct supervision and in the presence of the responsible physician. Thus, under the plain reading of the Physician's Assistant Act as applied to the facts of this case, a certified and otherwise qualified physician's assistant is authorized to harvest the saphenous vein, when such medical task is performed under the direct supervision and in the presence of the responsible physician.

(b) After the enactment of the Georgia Medical Consent Law, OCGA § 31-9-1 et seq., the "informed consent doctrine" was not a viable principle of law in Georgia because the General Assembly required disclosure of only the general terms of treatment. *McMullen v. Vaughan*, 138 Ga. App. 718, 721 (3) (227 SE2d 440). Accord *Butler v. Brown*, 162 Ga. App. 376, 377 (290 SE2d 293). In the case sub judice, the consent form signed by plaintiff Lonnie G. Gillis tracks the notice requirements of OCGA § 31-9-6.1 (a) (1) through (6), and so is presumed valid by operation of OCGA § 31-9-6.1 (b) (2). In my view, this general consent to undergo the described coronary artery bypass grafting as performed by Dr. Shaker "and any other physicians *or other medical personnel* who may be involved in the course of [his] treatment. . ." is unambiguous and gave implied permission, to the extent allowed under Georgia law, for the use of a physician's assistant listed in the letterhead of the consent form to harvest the saphenous vein, as conducted in this instance during the coronary artery bypass graft in the presence of and at the direction of the responsible physician. Consequently, I conclude the trial court correctly granted summary judgment to defendants CSA, Dr. Shaker, Livingston, and MCCG as to any claim for battery based on an allegedly nonconsensual use of the physician's assistant, defendant Livingston. Compare *Harris v. Tatum*, 216 Ga. App. 607, 609 (1) (b) (455 SE2d 124) (ambiguity in consent form construed against defendant physicians).

2. Next, plaintiffs contend the trial court erred in granting defendants' motions for summary judgment regarding the claim of negligence per se, based upon the alleged failure to post the notice required by OCGA § 43-34-106 that physician's assistants were employed during surgeries performed at defendant MCCG.

The evidence of Nurse Freeman that a notice was in fact posted in the emergency room of MCCG is an affirmative statement of fact, whereas the affidavit of plaintiff Lonnie G. Gillis is only the passive

statement that he did not see any notice.

Circumstantial evidence which does not demand a finding for a plaintiff constitutes a mere inconclusive inference and is thus insufficient to defeat a defendant's motion for summary judgment on that question. *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 781 (257 SE2d 186). Upon the evidentiary posture of the case sub judice, it is my view that the trial court correctly granted defendants' motions for summary judgment as to this claim of negligence per se, because plaintiffs' circumstantial evidence of the absence of notice is not inconsistent with defendants' direct evidence establishing the same. Therefore, in Case No. A99A0619, I concur only in this Court's judgment of affirmance.

I am authorized to state that Presiding Judge Andrews joins in this opinion.

DECIDED JULY 14, 1999 —
RECONSIDERATION DENIED JULY 29, 1999

*Sutton & Associates, Berrien L. Sutton, Ronald W. Hallman, Keith H. Solomon*, for appellants.

*Martin, Snow, Grant & Napier, John C. Edwards, Blair K. Cleveland, Sell & Melton, Mitchel P. House, Jr., Jeffrey B. Hanson*, for appellees.