S99G1712. CARDIO TVP SURGICAL ASSOCIATES, P.C. et al.
v. GILLIS.
(528 SE2d 785)

HUNSTEIN, Justice.

We granted certiorari to consider the Court of Appeals' ruling on Lonnie Gillis's battery claim against Cardio TVP Surgical Associates, P.C., Dr. I. J. Shaker, and Jay Livingston. *Gillis v. Cardio TVP Surgical Assoc.*, 239 Ga. App. 350 (1) (520 SE2d 767) (1999). That claim arose out of coronary artery bypass surgery Gillis underwent during which Livingston, a physician's assistant under the direct orders of Dr. Shaker, performed a procedure to remove ("harvest") a vein from Gillis's leg for use in the bypass procedure. The trial court granted partial summary judgment to the defendants on the battery claim, but the Court of Appeals reversed, holding that fact questions remained regarding Livingston's authority to perform the procedure and Gillis's consent to the surgery. Finding that the trial court's grant of partial summary judgment was correct as a matter of law, we reverse.

1. The General Assembly enacted the Physician's Assistant Act, OCGA § 43-34-100 et seq., "to encourage the more effective utilization of the skills of physicians by enabling them to delegate health

---

care tasks to [physician's assistants] where such delegation is consistent with the patient's health and welfare." OCGA § 43-34-101 (b). Under this Act, a physician's assistant ("PA") may be licensed to perform patients' services for which the PA has been found qualified to perform by academic and practical training. OCGA §§ 43-34-102 (5), 43-34-103 (a). The Act establishes an application procedure to be followed to obtain approval by the Composite State Board of Medical Examiners, the board charged with overseeing PAs, for the performance of specific medical tasks set forth in the proposed PA's job description. A PA is limited to those tasks set forth in the job description except when the task "is performed under the direct supervision and in the presence of the physician utilizing [the PA]," OCGA § 43-34-105, "in which case the [PA] may perform any work authorized for physicians that the assistant is competent to do." *Beall v. Curtis*, 603 FSupp. 1563, 1573 (M.D. Ga. 1985).

The Court of Appeals concluded that absent an express reference to the harvesting of veins in his job description, Livingston had no authority to perform this medical task. Assuming, arguendo, that such specificity is required by the Act, we agree with the Court of Appeals that OCGA § 43-34-105 is applicable here, since it is uncontroverted that Livingston harvested Gillis's vein under the direct supervision and in the presence of Dr. Shaker. The Court of Appeals, however, concerned that the language of OCGA § 43-34-105 would "allow a brain surgeon to delegate brain surgery" to a PA, held that it was a fact question for the jury to decide "whether a particular physician's assistant has the requisite skill level and training to perform a task not specifically approved by the Board." *Gillis*, supra at 353 (1) (b).

Our review of the Act establishes that it is a matter strictly for the Composite State Board of Medical Examiners to determine the nature and scope of the medical tasks for which any PA may be qualified to perform. The Act gives the Board the authority to approve the training programs PAs must satisfactorily complete, OCGA § 43-34-103 (a) (2) (A); to approve the qualifications of the evaluation agencies charged with determining the ability of a proposed PA to perform the tasks in the job description, id. at (2) (B), and ascertain that the agencies possess appropriate personnel, equipment, and health care expertise to enable the agencies "to make an objective appraisal, in a manner prescribed by the board, of the proposed [PA's] qualifications," OCGA § 43-34-102 (3); to approve or disapprove a proposed PA's application and issue licenses authorizing a PA to perform medical tasks under the direction and supervision of the utilizing physician, with the strict statutory mandate to not approve an application unless the Board finds that the proposed PA is "fully qualified," OCGA § 43-34-104 (b); and to terminate its approval and revoke the

license of any PA who is found to be incompetent or to have committed unethical or immoral acts. OCGA § 43-34-107 (a).

Given the comprehensive statutory scheme created by the General Assembly and the all-inclusive role played by the Composite State Board of Medical Examiners in the regulation of PAs, we reject as contrary to the purposes and intent of the Act the idea that any entity other than the Board can determine whether it is appropriate for a PA to perform any specific type of procedure, whether or not the procedure is contained within the PA's job description. The Court of Appeals' holding that a jury should make this determination is accordingly reversed.

In the case before us, Gillis adduced no evidence that the Composite State Board of Medical Examiners deems the harvesting of veins to be a medical task PAs are not competent to perform. Gillis has thus presented no evidence to rebut the testimony introduced by appellants from the executive director of the Board that the harvesting of saphenous veins from the legs of patients during coronary bypass surgery under the supervision of the attending physician is considered a routine medical task capable of being performed by PAs. Because no question remains as to the authority of PAs under the Act to perform this medical procedure, the Court of Appeals erred when it reversed the trial court's grant of partial summary judgment to appellants on this basis.

2. The evidence is uncontroverted that prior to the surgery, Gillis was provided with a consent form which disclosed all the information required in OCGA § 31-9-6.1 (a) (1)-(6), was duly evidenced in writing, and was signed by Gillis, a lucid adult capable of consenting to his surgery. Thus, a rebuttable presumption arose that Gillis validly consented to the surgery. Id. at (b) (2). See also *Lloyd v. Kramer*, 233 Ga. App. 372, 375 (503 SE2d 632) (1998). Gillis contends that the consent he gave did not negate his claim for battery because the form did not reflect that any part of the surgical procedure would be performed by a physician's assistant.[1] However, this argument overlooks the provision in OCGA § 31-9-6.1 (f) that

> [a] prior consent to surgical . . . procedures obtained pursuant to the provisions of this Code section shall be deemed to be valid consent for the responsible physician *and all medical personnel under the direct supervision and control of the*

---

[1] The letterhead to the consent form set forth the names of the clinic's physicians and PAs; the form provided that Gillis consented "to the performance of the procedures described or referred to herein by Dr. [blank, in which the names of the clinic's physicians, including Shaker, were inserted by hand] and any other physicians or other medical personnel who may be involved in the course of my treatment."

*responsible physician in the performance of such surgical . . . procedure* and for all other medical personnel otherwise involved in the course of treatment of the patient's condition.

(Emphasis supplied.)

Applying this statute, it thus appears that the valid consent obtained from Gillis prior to his surgery constituted a valid consent both as to Shaker, the responsible physician, and for all medical personnel, whether or not named, involved in the performance of the surgery under Shaker's direct supervision and control. Although Gillis argues that his consent to allow nonphysicians to participate in the procedure did not include consent to allow such nonphysicians to perform any actual surgical procedures, this argument overlooks the express language in OCGA § 31-9-6.1. Under subsection (a), the consent must be obtained from "any person who undergoes any *surgical* procedure" (emphasis supplied), and once a valid consent is properly obtained under (b) (2), the patient's consent to the surgery extends not only to the physician who personally performs the surgical procedure but also to nonphysicians who perform a surgical procedure under direct orders from the physician. Id. at (f) and (h) ("responsible physician" defined as "the physician who performs the procedure *or the physician under whose direct orders the procedure is performed by a nonphysician*" (emphasis supplied)).

Nothing in OCGA § 31-9-6.1 renders a consent invalid when the names of the nonphysicians participating in the surgical procedure are not included in the consent form. Compare *Albany Urology Clinic v. Cleveland*, 272 Ga. 296 (528 SE2d 777) (2000). Rather, OCGA § 31-9-6.1 recognizes that the responsible physician will be supervising and directing nonphysician personnel, some of whom will be performing surgical procedures under the responsible physician's direct orders, and provides that a consent valid under subsection (b) (2) "shall be deemed to be valid consent" for both the responsible physician and "all medical personnel under the direct supervision and control of the responsible physician." Id. at (f). Accordingly, because as a matter of law the consent Gillis executed pursuant to OCGA § 31-9-6.1 (b) (2) is deemed valid for the performance of the surgery by both Shaker and any nonphysicians such as Livingston who performed procedures during the surgery under Shaker's direct orders, the fact questions Gillis attempts to raise regarding whether he intended his consent to the procedure to include the performance of surgical procedures by a PA cannot preclude judgment in favor of appellants.[2]

---

[2] *Central Anesthesia Assoc. v. Worthy*, 254 Ga. 728 (1) (333 SE2d 829) (1985), relied upon by Gillis, does not change this result. That opinion involved OCGA § 43-26-9 (b), which

The Court of Appeals thus erred when it reversed the grant of partial summary judgment to which appellants were entitled as a matter of law on Gillis's battery claim.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 1, 2000 —
RECONSIDERATION DENIED MAY 30, 2000.

*Martin, Snow, Grant & Napier, John C. Edwards, Blair K. Cleveland,* for appellants.

*Sell & Melton, Mitchel P. House, Jr., Berrien L. Sutton, Keith H. Solomon, Ronald W. Hallman,* for appellee.

*Vincent, Berg, Stalzer & Menendez, Kenneth G. Menendez, Sidney N. Summers, David A. Cook,* amici curiae.

---

allows the administering of anesthesia by a certified registered nurse anesthetist acting under the direction and responsibility of an anesthesiologist, and did not address the authority of a PA to perform a medical task while under the direct supervision and in the presence of the utilizing physician. OCGA § 43-34-105. The plaintiff in *Worthy* sustained her injuries allegedly from anesthesia improperly administered by an unlicensed student nurse anesthetist. This Court rejected the argument that the statutory requirements had been met because a PA had been delegated the statutory supervision requirement, holding that the first requirement in the statute had not been met, in that no student anesthetist could lawfully administer anesthesia. Although the Court in dicta addressed the supervision requirement and noted, factually, that "no supervising anesthesiologist, necessary under all of the pertinent statutes and rules cited to us, was present or even aware of the administration of anesthesia to [the plaintiff]," *Worthy,* supra at 731 (1), we decline now to interpret this language as a rejection of a PA's authority to perform a supervisory medical task outside the physical presence but under the personal direction or supervision of the utilizing physician when the task is contained within the PA's job description. OCGA § 43-34-102 (5).